FILED

MAY 24 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY MV DEPUTY CLERK

AO 241
(Rev. 12/04)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| | |
|---|---|
| **United States District Court** | District: EASTERN (FRESNO) |
| Name (under which you were convicted): BRIAN DOUGLAS MARTIN | Docket or Case No.: |
| Place of Confinement : SALINAS VALLEY STATE PRISON FAC. C3 · 220, P.O. BOX 1050 SOLEDAD, CA 93960-1050 | Prisoner No.: T-94632 |
| Petitioner (include the name under which you were convicted) BRIAN DOUGLAS MARTIN (IN PRO PER) | v. Respondent (authorized person having custody of petitioner) M. S. EVANS (WARDEN) |
| The Attorney General of the State of CALIFORNIA | |

**PETITION** 1: 07 CV 00765 LJO WMW LHC

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   FRESNO COUNTY SUPERIOR COURT
   1100 VAN NESS AVE.
   FRESNO, CA 93724-0002

   (b) Criminal docket or case number (if you know): 670487-8

2. (a) Date of the judgment of conviction (if you know): APRIL 10, 2003

   (b) Date of sentencing: MAY 19, 2003

3. Length of sentence: 22 YEARS TO LIFE

4. In this case, were you convicted on more than one count or of more than one crime? ☒ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   COUNT (1): PENAL CODE 187(a)
   COUNT (2): PENAL CODE 246

6. (a) What was your plea? (Check one)

   ☒ (1) Not guilty ☐ (3) Nolo contendere (no contest)
   ☐ (2) Guilty ☐ (4) Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

NOT GUILTY ON ALL COUNTS

(c) If you went to trial, what kind of trial did you have? (Check one)

☒ Jury ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☒ Yes ☐ No

8. Did you appeal from the judgment of conviction?

☒ Yes ☐ No

9. If you did appeal, answer the following:

(a) Name of court: COURT OF APPEAL; FIFTH APPELLATE COURT

(b) Docket or case number (if you know): F043105

(c) Result: AFFIRMED

(d) Date of result (if you know): 3-18-05

(e) Citation to the case (if you know):

(f) Grounds raised: (1). COURT DENIED DUE PROCESS WHEN IT DENIED MOTION TO SEVER.
(2). COURT DENIED PETITIONER DUE PROCESS OF LAW AND THE ABILITY TO PRESENT A DEFENSE
(3). WARRANTLESS SEIZURE OF BLOOD SAMPLES FOR D.N.A.

(g) Did you seek further review by a higher state court? ☒ Yes ☐ No

If yes, answer the following:

(1) Name of court: CALIFORNIA SUPREME COURT

(2) Docket or case number (if you know): S133328

(3) Result: DENIED WITHOUT PREJUDICE

(4) Date of result (if you know): JUNE 8, 2005

(5) Citation to the case (if you know):

(6) Grounds raised: (1). DENIAL OF RIGHT TO PRESENT A COMPLETE DEFENSE.
(2). RECEIVED AGGRAVATED AND CONSECUTIVE SENTENCE BASED ON FACTS NOT FOUND BY JURY.
(3). WARRANTLESS SEIZURE OF BLOOD SAMPLES.

(h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☒ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result: N/A

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☒ Yes ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: FRESNO COUNTY SUPERIOR COURT

(2) Docket or case number (if you know): NO. 06CRWR677929

(3) Date of filing (if you know): JUNE 8, 2006

(4) Nature of the proceeding: HABEAS CORPUS PETITION

(5) Grounds raised: (1) COURT DENIED PETITIONER DUE PROCESS WHEN IT DENIED SEVERANCE. (2) COURT VIOLATED 6TH & 14TH AMENDMENTS WHEN IT PRECLUDED APPELLANT FROM CROSS-EXAMINATION OF PROSECUTIONS EXPERT WITNESS TO PRESENT A COMPLETE DEFENSE AND TO CONFRONT WITNESS.
(3) PROSECUTIONAL MISCONDUCT RESULTING IN AN UNFAIR TRIAL VIOLATING THE DUE PROCESS CLAUSE.
(4) PLAIN ERRORS CLEAR AND OBVIOUS AFFECTING PETITIONER SUBSTANTIAL CONSTITUTIONAL RIGHTS.
(5) INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL VIOLATING PETITIONERS RIGHT AS GUARANTEED BY THE U.S. CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS THERETO.
(6) INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. THIS VIOLATED PETITIONERS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE U.S. CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS THERETO.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: THE PETITION WAS DENIED

(8) Date of result (if you know): JUNE 8, 2006

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: COURT OF APPEAL OF CALIFORNIA; FIFTH APPELLATE DIST.

(2) Docket or case number (if you know): F051037

(3) Date of filing (if you know): AUG. 22 2006

(4) Nature of the proceeding: HABEAS CORPUS PETITION

(5) Grounds raised: SEE ADDITIONAL PAGES SUBMITTED INCORPORATED BY REFERENCE

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: DENIED

(8) Date of result (if you know): SEPTEMBER 29, 2006

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: CALIFORNIA SUPREME COURT

(2) Docket or case number (if you know): S147248

(3) Date of filing (if you know): OCTOBER 12, 2006

(4) Nature of the proceeding: HABEAS CORPUS PETITION

(5) Grounds raised: SEE ADDITIONAL PAGES SUBMITTED INCORPORATED BY REFERENCE

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: DENIED

(8) Date of result (if you know): APRIL 18, 2007

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☒ Yes ☐ No

(2) Second petition: ☒ Yes ☐ No

(3) Third petition: ☒ Yes ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

N/A

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED ME OF DUE PROCESS OF LAW UNDER THE FEDERAL CONSTITUTION WHEN IT DENIED MOTION TO SEVER COUNTS 1 FROM 2.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ADDITIONAL PAGES SUBMITTED UNDER 'SUPPORTING FACTS'

INCORPORATED BY REFERENCE

(b) If you did not exhaust your state remedies on Ground One, explain why: N/A

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☒ Yes ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

N/A

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed:
FRESNO COUNTY SUPERIOR COURT
1100 VAN NESS AVE.
FRESNO, CA 93724-0002

Docket or case number (if you know): 670487-8

Date of the court's decision: JUNE 8, 2006

Result (attach a copy of the court's opinion or order, if available):

THE PETITION WAS DENIED

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
FIFTH APPELLATE DISTRICT COURT
2525 CAPITOL STREET
FRESNO, CA 93721

Docket or case number (if you know):
F051037

Date of the court's decision:
SEPTEMBER 29, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: SUBMITTED HABEAS CORPUS PETITIONS TO: FRESNO COUNTY SUPERIOR COURT,
FIFTH APPELLATE DISTRICT COURT,
CALIFORNIA SUPREME COURT.

GROUND TWO: TRIAL COURT VIOLATED 6TH AMENDMENT AND 14TH AMENDMENT RIGHTS WHEN IT PRECLUDED APPELLANT FROM CROSS-EXAMINATION OF PROSECUTIONS EXPERT WITNESS TO PRESENT A COMPLETE DEFENSE AND TO CONFRONT WITNESS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ADDITIONAL PAGES SUBMITTED
UNDER 'SUPPORTING FACTS'
INCORPORATED BY REFERENCE

(b) If you did not exhaust your state remedies on Ground Two, explain why: N/A

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☒ Yes ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: N/A

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed:
FRESNO COUNTY SUPERIOR COURT
1100 VAN NESS AVE.
FRESNO, CA 93724-0002

Docket or case number (if you know): 670487-8

Date of the court's decision: JUNE, 8, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: FIFTH APPELLATE DISTRICT CT, 2525 CAPITOL STREET FRESNO, CA 93721

Docket or case number (if you know): F051037

Date of the court's decision: SEPTEMBER 29, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two SUBMITTED HABEAS CORPUS PETITIONS TO:

FRESNO COUNTY SUPERIOR COURT
FIFTH APPELLATE DISTRICT COURT
CALIFORNIA SUPREME COURT

**GROUND THREE:** PROSECUTIONAL MISCONDUCT RESULTING IN AN UNFAIR TRIAL VIOLATING THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ADDITIONAL PAGES SUBMITTED UNDER 'SUPPORTING FACTS'
INCORPORATED BY REFERENCE

(b) If you did not exhaust your state remedies on Ground Three, explain why? N|A

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: C.C.A.P. APPOINTED APPELLATE COUNSEL FAILED TO RAISE ISSUE INEFFECTIVENESS OF COUNSEL

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed: FRESNO COUNTY SUPERIOR
1100 VAN NESS AVE.
FRESNO, CA 93724-0002

Docket or case number (if you know): 670487-8

Date of the court's decision: JUNE 8, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
FIFTH APPELLATE DISTRICT COURT
2525 CAPITOL STREET
FRESNO, CA 93721

Docket or case number (if you know): F051037

Date of the court's decision: SEPTEMBER 29, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: SUBMITTED HABEAS CORPUS PETITIONS TO:
FRESNO COUNTY SUPERIOR COURT
FIFTH APPELLATE DISTRICT COURT
CALIFORNIA SUPREME COURT

**GROUND FOUR:** PLAIN ERROR(S) CLEAR AND OBVIOUS AFFECTING PETITIONERS SUBSTANTIAL CONSTITUTIONAL RIGHTS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
SEE ADDITIONAL PAGES SUBMITTED
UNDER 'SUPPORTING FACTS'
INCORPORATED BY REFERENCE

(b) If you did not exhaust your state remedies on Ground Four, explain why: N/A

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ❒ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: C.C.A.P. APPOINTED APPELLATE COUNSEL FAILED TO RAISE ISSUE. INEFFECTIVENESS OF COUNSEL

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ❒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed: FRESNO COUNTY SUPERIOR COURT
1100 VAN NESS AVE.
FRESNO, CA 93724-0002

Docket or case number (if you know): 070487-8

Date of the court's decision: JUNE 8, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: FIFTH APPELLATE DISTRICT Ct.
2525 CAPITOL STREET
FRESNO, CA 93721

Docket or case number (if you know): F051037

Date of the court's decision: SEPTEMBER 29, 2006

Result (attach a copy of the court's opinion or order, if available):

DENIED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: SUBMITTED HABEAS CORPUS PETITIONS TO:

FRESNO COUNTY SUPERIOR COURT
FIFTH APPELLATE DISTRICT COURT
CALIFORNIA SUPREME COURT

**GROUND FIVE**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ADDITIONAL PAGES SUBMITTED UNDER 'SUPPORTING FACTS' INCORPORATED BY REFERENCE

(b) If you did not exhaust your state remedies on Ground FIVE, explain why? N/A

(c) **Direct Appeal of Ground** FIVE

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: C.C.A.P. APPOINTED APPELLATE COUNSEL FAILED TO RAISE ISSUE. INEFFECTIVENESS OF COUNSEL

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed: FRESNO COUNTY SUPERIOR COURT
1100 VAN NESS AVE.
FRESNO, CA 93724-0002

Docket or case number (if you know): 670487-8

Date of the court's decision: JUNE 8, 2006

Result (attach a copy of the court's opinion or order, if available): DENIED

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: FIFTH APPELLATE DISTRICT COURT
2525 CAPITOL STREET
FRESNO, CA 93721

Docket or case number (if you know): F051037

Date of the court's decision: SEPTEMBER 29, 2006

Result (attach a copy of the court's opinion or order, if available): DENIED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground FIVE SUBMITTED HABEAS CORPUS PETITIONS TO: FRESNO COUNTY SUPERIOR COURT
FIFTH APPELLATE DISTRICT COURT
CALIFORNIA SUPREME COURT

**GROUND** SIX

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
SEE ADDITIONAL PAGES SUBMITTED UNDER 'SUPPORTING FACTS' INCORPORATED BY REFERENCE

(b) If you did not exhaust your state remedies on Ground SIX, explain why: N/A

(c) **Direct Appeal of Ground** SIX

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: ISSUE IS AGAINST COUNSEL REPRESENTING ME ON DIRECT APPEAL

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed: FRESNO COUNTY SUPERIOR COURT
1100 VAN NESS AVE.
FRESNO, CA 93724-0002

Docket or case number (if you know): 670487-8

Date of the court's decision: JUNE 8, 2006

Result (attach a copy of the court's opinion or order, if available): DENIED

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: FIFTH APPELLATE DISTRICT COURT
2525 CAPITOL STREET
FRESNO, CA 93721

Docket or case number (if you know): F051037

Date of the court's decision: SEPTEMBER 29, 2006

Result (attach a copy of the court's opinion or order, if available): DENIED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Six SUBMITTED HABEAS CORPUS PETITIONS TO: FRESNO COUNTY SUPERIOR COURT
FIFTH APPELLATE DISTRICT COURT
CALIFORNIA SUPREME COURT

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☒ Yes ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: N/A

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them: NO

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. N/A

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised. N/A

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: JUAN M. FALCON & ASS. INC.
2014 TULARE STREET, SUITE 212
FRESNO, CA 93721

(b) At arraignment and plea: SAME, AS ABOVE

(c) At trial: SAME AS ABOVE

(d) At sentencing: SAME AS ABOVE

(e) On appeal: BALIN & KOTLER
1750 FRANCISCO BIvd.
PACIFICA, CA 94044

(f) In any post-conviction proceeding: SAME AS ABOVE

(g) On appeal from any ruling against you in a post-conviction proceeding: SAME AS ABOVE

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? ☐ Yes ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? N/A ☐ Yes ☒ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: (1) ORDER AN EVIDENTIARY HEARING AND APPOINT COUNSEL FOR THE PETITIONER; (2) GRANT THE WRIT OF HABEAS CORPUS, REVERSE MY CONVICTION, AND ORDER A NEW TRIAL; (3) APPOINT COUNSEL FOR PETITIONER; AND (4) GRANT ALL OTHER APPROPRIATE RELIEF.

or any other relief to which petitioner may be entitled.

________________________________

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on 5-17-07 (month, date, year).

Executed (signed) on 5-17-07 (date).

________________________________

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN FORMA PAUPERIS DECLARATION

________________________________

[insert appropriate court]

* * * * *

# TABLE OF CONTENTS


| DOCUMENT(S) TITLE | PAGE |
|---|---|
| COURTS OPINION/ORDER | i |
| INCORPORATION BY REFERENCE | v |
| PAGE 5, QUESTION 11(b), #5 GROUNDS RAISED: CONTINUED | vi |
| PAGE 5, QUESTION 11(c), #5 GROUNDS RAISED CONTINUED | vii |
| SUPPORTING FACTS, GROUNDS 1-6 CONTINUED | viii |
| POINTS AND AUTHORITIES GROUNDS 1-6 CONTINUED | xvii |
| INDEX TO EXHIBIT(S) | |

HC06CRWR677929-JBC-cm

FILED

JUN - 8 2006

FRESNO COUNTY SUPERIOR COURT
By ________________ DEPUTY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO**

**CENTRAL DIVISION**

| | |
|---|---|
| **In re** | **No. 06CRWR677929 Dept. 98B** |
| **BRIAN DOUGLAS MARTIN,** | |
| **Petitioner** | **ORDER** |
| **On Habeas Corpus.** | |

Having considered the petition for writ of habeas corpus filed on June 6, 2006, and the record in case no. 670487-7 and appeal no. F043105, the court finds that existing evidence does not justify the requested relief. In reaching this conclusion, the court notes that many of the issues petitioner raises either were or could have been raised by appeal. Such issues will not be reconsidered by way of writ petition. (*In re Seaton* (2004) 34 Cal.4th 193, *In re Harris* (1993) 5 Cal.4th 813, *In re Clark* (1993) 5 Cal.4th 750, and *Ex parte Dixon* (1953) 41 Cal.2d 756.) Furthermore, to support a claim of ineffective assistance of counsel, petitioner must establish that the trial and appellate attorneys' conduct was not only deficient, but it was also prejudicial. (See, e.g., *Young v. Runnels* (9th Cir. 2006) 435 F.3d

1038, *In re Fields* (1990) 51 Cal.3d 1063, *In re Visciotti* (1996) 14 Cal.4th 325, and *Strickland v. Washington* (1984) 466 U.S. 668.) Existing documentation does not establish any such prejudicial error.

The petition is denied.

DATED this 8th day of June, 2006.

JONATHAN B. CONKLIN

JONATHAN B. CONKLIN
Judge of the Superior Court

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## Fifth Appellate District

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
FILED

SEP 29 2006

LEISA V. BIGGERS, CLERK/ADMINISTRATOR
By__________ Deputy

| | |
|---|---|
| In re<br>BRIAN DOUGLAS MARTIN,<br>On Habeas Corpus. | F051037 |

BY THE COURT*:

The "Petition For Writ Of Habeas Corpus" filed in this court on August 22, 2006, is denied.

[signature] Acting P.J.

*Before Wiseman, Acting P.J., Levy, J., and Cornell, J.

S147248

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re BRIAN DOUGLAS MARTIN on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

George, C. J., was absent and did not participate.

SUPREME COURT
FILED

APR 1 8 2007

Frederick K. Ohlrich Clerk

Deputy

MORENO
Acting Chief Justice

## INCORPORATION BY REFERENCE

PETITIONER INCORPORATES BY REFERENCE THE PETITION FOR WRIT OF HABEAS CORPUS, ALONG WITH GROUNDS 5 AND 6 PROVIDED ON SEPARATE PAGES, ALONG WITH ALL SUPPORTING DOCUMENTS, INCLUDING SUPPORTING EXHIBITS AND POINTS AND AUTHORITIES.

BRIAN D. MARTIN

PETITIONER,

IN PROPRIA PERSONA

<CONTINUED>

**PAGE 5, QUESTION 11 (b), (5) GROUNDS RAISED:**

**GROUND 1:** THE TRIAL COURT ABUSED IT'S DISCRETION AND DENIED ME OF DUE PROCESS OF LAW UNDER THE FEDERAL CONSTITUTION WHEN IT DENIED MY MOTION TO SEVER COUNTS 1 FROM 2.

**GROUND 2:** TRIAL COURT VIOLATED MY 6TH AMENDMENT AND 14TH AMENDMENT RIGHTS WHEN IT PRECLUDED ME FROM CROSS-EXAMINATION OF PROSECUTIONS EXPERT WITNESS TO PRESENT A COMPLETE DEFENSE AND TO CONFRONT WITNESS.

**GROUND 3:** PROSECUTIONAL MISCONDUCT RESULTING IN AN UNFAIR TRIAL VIOLATING THE DUE PROCESS CLAUSE.

**GROUND 4:** PLAIN ERROR(S) CLEAR AND OBVIOUS AFFECTING MY SUBSTANTIAL CONSTITUTIONAL RIGHTS.

**GROUND 5:** INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL VIOLATING MY RIGHTS AS GUARANTEED BY THE U.S. CONSTITUTION AND THE 5TH, 6TH AND 14TH AMENDMENTS.

**GROUND 6:** INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. THIS VIOLATED MY RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE U.S. CONSTITUTION AND THE 5TH, 6TH, AND 14TH AMENDMENTS.

<CONTINUED>

**PAGE 5, QUESTION 11 (c), (5) GROUNDS RAISED:**

**<u>GROUND 1:</u>** THE TRIAL COURT ABUSED IT'S DISCRETION AND DENIED ME OF DUE PROCESS OF LAW UNDER THE FEDERAL CONSTITUTION WHEN IT DENIED MY MOTION TO SEVER COUNTS 1 FROM 2.

**<u>GROUND 2:</u>** TRIAL COURT VIOLATED MY 6TH AMENDMENT AND 14TH AMENDMENT RIGHTS WHEN IT PRECLUDED ME FROM CROSS-EXAMINATION OF PROSECUTIONS EXPERT WITNESS TO PRESENT A COMPLETE DEFENSE AND TO CONFRONT WITNESS.

**<u>GROUND 3:</u>** PROSECUTIONAL MISCONDUCT RESULTING IN AN UNFAIR TRIAL VIOLATING THE DUE PROCESS CLAUSE.

**<u>GROUND 4:</u>** PLAIN ERROR(S) CLEAR AND OBVIOUS AFFECTING MY SUBSTANTIAL CONSTITUTIONAL RIGHTS.

**<u>GROUND 5:</u>** INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL VIOLATING MY RIGHTS AS GUARANTEED BY THE U.S. CONSTITUTION AND THE 5TH, 6TH AND 14TH AMENDMENTS.

**<u>GROUND 6:</u>** INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. THIS VIOLATED MY RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE U.S. CONSTITUTION AND THE 5TH, 6TH, AND 14TH AMENDMENTS.

<CONTINUED>

# SUPPORTING FACTS

# GROUNDS 1-6

< CONTINUED >

**PAGE 6, QUESTION 12 (a), GROUNDS 1-6**

**<u>GROUND 1:</u> SUPPORTING FACTS**

JULY 31, 2002 A HEARING WAS HELD IN THE PRESENCE OF JUDGE HAMLIN TO DISCUSS A MOTION FOR SEPARATE TRIALS, THE MOTION WAS DENIED. ON MARCH 24, 2003 TRIAL JUDGE HOFF HEARD A MOTION TO BIFURCATE THE TRIAL OF COUNT 1 AND 2. HOFF STATED, "THE MATTER PREVIOUSLY BEING RAISED, RULED ... THE MATTER HAS PREVIOUSLY BEEN DENIED AND IT REMAINS DENIED" <Rpt 2-113>. TRIAL JUDGE HOFF SENTENCED PETITIONER TO CONSECUTIVE TERMS AND HELD THAT THE TWO INCIDENTS WERE INDEED SEPARATE <7 Rpt-1131>. TRIAL JUDGE HOFF STATES "SEPARATE" SEVEN TIMES REFERRING TO THE PETITIONERS CRIMES YET DENIED PETITIONERS MOTION TO SEVER. HOW CAN ONE JUDGE RULE THAT THE ACTS WERE SEPARATE AND AN OTHER JUDGE RULE THAT THE ACTS WERE NOT SEPARATE? THE JUDGES' APPLIED THE LAW/RULE WITH OUT MERIT AND ONLY WHEN IT SUITED THE COURTS NEEDS PREJUDICING THE ENTIRE PROCEEDING. DENIAL OF SEVERANCE MOTION FORCED PETITIONER TO ADMIT TO COUNT 2 TO DEFEND COUNT 1 EVEN THOUGH COUNT 2 WAS NOT PROVEN WITH TESTIMONY OR EVIDENCE BY THE PROSECUTION. HAD SEVERANCE BEEN GRANTED PETITIONER WOULD HAVE ENVOKED HIS 5TH CONSTITUTIONAL RIGHT ON COUNT 2 AND A MORE FAVORABLE OUTCOME WOULD HAVE OCCURRED. FRESNO SUPERIOR COURT JUDGE CONKLIN ERRORED IN FINDING THAT EXISTING EVIDENCE DOES NOT EXIST. IN REACHING THIS CONCLUSION, JUDGE CONKLIN NOTED

THAT THE ISSUES I RAISED EITHER WERE OR COULD HAVE BEEN RAISED BY APPEAL. SUCH ISSUES WILL NOT BE RECONSIDERED BY WAY OF WRIT PETITION. JUDGE CONKLIN'S FAILURE TO EVEN CONSIDER THIS ISSUE OBSTRUCTED THE FACT THAT THIS IS A COGNIZABLE ISSUE.

**1.) ALL EXHIBITS ATTACHED.**

**2.) POINTS AND AUTHORITIES ATTACHED.**

**<u>GROUND 2:</u> SUPPORTING FACTS**

THIS IS ABOUT CONSTITUTIONAL VIOLATIONS. PETITIONER ATTEMPTED TO CROSS-EXAMINE FRESNO POLICE SPECIALIST SOLOMAN WELLS ABOUT HEAT OF PASSION CRIMES. THE PROSECUTOR, MR. PETERSON, OBJECTED AND JUDGE HOFF SUSTAINED THE OBJECTION. I NEXT ATTEMPTED TO ASK DETECTIVE WELLS "WHAT TYPE OF OBJECTIVE INDICIA ARE THERE TO DEMONSTRATE "HEAT OF PASSION CRIMES"? MR. PETERSON OBJECTED AND AGAIN THE COURT SUSTAINED ON GROUNDS OF RELEVANCY. THEY DENIED MY COUNSELS IMMEDIATE REQUEST FOR A SIDE BAR <5 Rpt-614>. JUDGE HOFF LIMITED MY ABILITY TO SECURE THE TESTIMONY OF A FAVORABLE WITNESS. JUDGE HOFF AND MR. PETERSON STOPPED THE JURY FROM HEARING TESTIMONY IN THE AREA OF HEAT OF PASSION CRIMES. A COLLOQUY DID TAKE PLACE AT THE END OF THE DAY OUT OF THE PRESENCE OF THE JURY. THIS TESTIMONY WAS RELEVANT TO THE MENTAL STATE REQUIRED FOR 2ND DEGREE IMPLIED MALICE. I WAS NOT ALLOWED TO CONFRONT THE WITNESS TO PRESENT A COMPLETE DEFENSE TO THE JURY. WITH TESTIMONY HEARD IN THIS AREA IT IS LIKELY THAT THE JURY WOULD HAVE ACCEPTED MY THEORY. LACK OF THIS TESTIMONY IS HIGHLY PREJUDICIAL TO MY TRIAL. THIS IS A COGNIZABLE ISSUE.

1.) **ALL EXHIBITS ATTACHED.**

2.) **POINTS AND AUTHORITIES ATTACHED.**

**GROUND 3: SUPPORTING FACTS**

IN A CASE THAT HINGES ON MY CREDIBILITY, MR. PETERSON DOES ALL HE CAN DO TO DAMAGE IT AND MY DEFENSE. DURING CLOSING ARGUMENTS THE PROSECUTOR, MR. PETERSON, MISTATES FACTS TO THE JURY ABOUT MY TESTIMONY MISLEADING THE JURY TO DISCREDIT MY TESTIMONY. TWELVE SHORT SENTENCES LATER MR. PETERSON STATES THAT HE IS ATTACKING MY CREDIBILITY. AFTER WHICH MY ATTORNEY FAILS TO OBJECT AND THE TRIAL JUDGE FAILS TO STEP-IN TO INSTRUCT THE JURY. MR. PETERSON TELLS THE JURY WHAT HIS OPINION IS BY STATING, "LET ME GIVE YOU WHAT I THINK IS AN EXAMPLE OF ADEQUATE PROVOCATION". MR. PETERSON COACHED A GOVERNMENT WITNESS. THE THE WITNESS TESTIFY'S MR. PETERSON GAVE AN INDICATION DURING THE INTERVIEW PROCESS ABOUT THE DETAILS OF THE CRIME BEFORE THIS WITNESS PROVIDES INFORMATION ON THE CASE <Rpt 4-519>.

MR. PETERSON SUCCESSFULLY KEEPS TESTIMONIAL EVIDENCE FAVORABLE TO MY DEFENSE OUT BY OBJECTING TO CROSS-EXAMINATION OF DET. SOLOMAN WELLS. MR.PETERSON OBJECTS NOT ONCE BUT TWICE ON THE GROUNDS OF RELEVANCE. JUDGE HOFF SUSTAINS THE OBJECTIONS. THIS TRIAL WAS TO ESTABLISH PUNISHMENT MORE SO THAN INNOCENSE. I ADMITTED INVOLVEMENT. THE RELEVANCE OF THIS TESTIMONIAL EVIDENCE OMITTED HAS A DIRECT BEARING ON MY PUNISHMENT. THE JURORS ARE UNABLE TO ESTABLISH AN UNDERSTANDING OF HEAT OF PASSION CRIMES AND THE THEORY BEHIND THE LAW. WHETHER

PURPOSELY OR MISTAKENLY MR. PETERSON MISSTATED MY TESTIMONY TO THE JURORS. WHETHER PURPOSELY OR MISTAKENLY MR. PETERSON STATED HIS OPINION TO THE JURY. WHETHER PURPOSELY OR MISTAKENLY MR. PETERSON COACHED A WITNESS. IF NONE OF THIS OCCURS OR IS AT LEAST CORRECTED THE TRIAL IS FAIR AND MY CONSTITUTIONAL RIGHTS ARE SAVED. THESE ACTS ALONE OR ALL TOGETHER EQUAL MISCONDUCT. FAILURE TO ADVANCE CLAIM AT TRIAL AND DIRECT APPEAL BECAUSE OF INEFFECTIVENESS OF COUNSEL. PLAIN ERROR(S) APPLIES. SEE GROUND 2 FOR DOCUMENTS RELEVANT TO FRESNO POLICE SPECIALIST SOLOMAN WELLS. THIS IS A COGNIZABLE ISSUE AND SUPERIOR COURT ERRORED IN ITS CONCLUSION.

1.) **ALL EXHIBITS ATTACHED.**

2.) **POINTS AND AUTHORITIES ATTACHED.**

**<u>GROUND 4:</u> SUPPORTING FACTS**

THE PROSECUTOR, MR. PETERSON, MISSTATED MY TESTIMONY DURING CLOSING ARGUMENTS. MY TRIAL COUNSEL FAILED TO OBJECT. MR. PETERSON MISSTATED THE LAW DURING CLOSING ARGUMENTS. MY TRIAL COUNSEL AGAIN FAILED TO OBJECT. JUDGE HOFF FAILED TO ACKNOWLEDGE THESE PLAIN ERRORS AND FAILED TO INSTRUCT THE JURORS TO DISREGARD THESE MISSTATEMENTS. MR. PETERSON MADE OBJECTIONS TO TESTIMONY RELEVANT TO MY DEFENSE. MY CASE RESTED MOSTLY ON MY CREDIBILITY. THE MISCONDUCT EFFECTED SUBSTANTIAL CONSTITUTIONAL RIGHTS AND WERE CLEAR AND OBVIOUS. SEE GROUND 3 FOR DOCUMENTS RELEVANT TO PROSECUTOR MISCONDUCT.

1.) **ALL EXHIBITS ATTACHED.**

2.) **POINTS AND AUTHORITIES ATTACHED.**

**GROUND 5: SUPPORTING FACTS**

THERE WAS A FUNDAMENTAL BREAKDOWN IN OUR ATTORNEY CLIENT RELATIONSHIP. BEFORE TRIAL MY COUNSEL CLAIMED TO HIRE STEPHEN PITTEL AS AN EXPERT IN THE AREA OF HEAT OF PASSION CRIMES. I FOUND OUT THAT PITTEL WAS ACTUALLY AN ALCOHOL EXPERT. MY COUNSEL RELIED SOLELY ON THE FRESNO DETECTIVE, SOLOMAN WELLS, WHO WAS PART OF MR. PETERSON'S CASE, FOR THE TESTIMONY IN THE AREA OF HEAT OF PASSION. JUDGE HOFF WOULD NOT ALLOW MY COUNSEL TO ASK MR. WELLS QUESTIONS IN THIS AREA. THE JURY DID NOT HEAR TESTIMONY REGARDING HEAT OF PASSION. MY COUNSEL FAILED TO ENTERTAIN OR PURSUE AN ALTERNATIVE STRATEGY OR TACTIC. MY COUNSEL HIRED MR. PITTEL KNOWING THAT IN 1995 THE LEGISLATURE CHANGED THE STATUTE SO THAT VOLUNTARY INTOXIFICATION NO LONGER APPLIES. MR. PETERSON MISSTATES MY TESTIMONY TO THE JURY. MY COUNSEL FAILED TO OBJECT. I ASKED MY COUNSEL TO OBJECT AND COUNSEL STATED "NO OBJECTIONS ARE ALLOWED DURING CLOSING ARGUMENTS." THIS IS UNTRUE. I REQUESTED MY COUNSELS HELP AND HE FAILED. MY COUNSEL NEGLECTED TO ARGUE THE ISSUES BASED ON THE FACTS AS POINTED OUT IN THE RESPONDANTS BRIEF <PAGE 14> ON DIRECT APPEAL. THAT'S RIGHT, EVEN THE ATTORNEY GENERAL OF CALIFORNIA BELIEVES MY COUNSEL WAS DEFICIENT. MY COUNSEL FAILED TO RENEW THE SEVERANCE MOTION AT THE END OF TRIAL. MY COUNSEL CLAIMED THAT JUDGE HOFF WOULD NOT ALLOW <u>ME</u> TO VIEW THE CELL PHONE RECORDS. THE STIPULATION THAT

ORDERS THESE PHONE RECORDS TURNED OVER MAKE NO MENTION THAT I AM NOT TO VIEW THEM. HAD I VIEWED THOSE RECORDS I WOULD HAVE PROVED MY CASE. DURING DIRECT APPEAL I ASKED MY TRIAL COUNSEL FOR HIS WORK PRODUCT. MY LETTER WAS RECEIVED. MY COUNSEL FAILED TO RESPOND. COUNSELS PERFORMANCE WAS DEFICIENT AND FELL WELL BELOW ANY OBJECTIVE STANDARD OF REASONABLENESS.

FRESNO SUPERIOR COURT JUDGE CONKLIN CONCLUDED THAT MY ATTORNEY'S CONDUCT WAS DEFICIENT, HOWEVER, DISPUTES THAT THE CONDUCT WAS PREJUDICIAL. JUDGE CONKLIN WRONGLY APPLIED THE LAW TO THE FACTS IN MY CASE. MY COUNSEL'S LIES AND FAILURE TO ENTERTAIN AN ALTERNATIVE STRATEGY ALONE PROVES PREJUDICE. COUPLE THAT WITH MY COUNSEL'S FAILURE TO OBJECT TO PROSECUTOR'S MISCONDUCT OVERWHELMINGLY ESTABLISHES PREJUDICE TO MY TRIAL PROCEEDINGS.

1.) **ALL EXHIBITS ATTACHED.**

2.) **POINTS AND AUTHORITITES ATTACHED.**

**GROUND 6: SUPPORTING FACTS**

MY ATTORNEY WAS OVERWHELMED. MRS. KOTLER OF BALIN & KOTLER WAS APPOINTED TO REPRESENT ME BY C.C.A.P. ON JUNE 17, 2003. I ASKED MRS. KOTLER TO RAISE SPECIFIC ISSUES. KOTLER FILED THE A.O.B. WITHOUT MY REVIEWING IT PRIOR. KOTLER FAILED TO RAISE ISSUES. I BEGAN TO COPY MY LETTERS AND MAILED THEM TO KOTLER VIA CERTIFIED MAIL. AT ONE POINT KOTLER ASKED THAT I NO LONGER SEND HER MAIL CERTIFIED BECAUSE ITS INCONVENIENT FOR HER TO SIGN FOR MY MAIL. I ASKED KOTLER FOR A COPY OF MY TRIAL TRANSCRIPTS. KOTLER CONFIDED TO ME IN A LETTER DATED APRIL 21, 2004, THAT SHE DOES NOT

HAVE SECRETARIAL HELP AND WORKS ALONE THEREFORE SHE CANNOT PROVIDE ME COPIES. APPELLATE ATTORNEY'S ARE ALLOCATED FINANCIAL MEANS TO PROVIDE CLIENTS WITH COPIES. I ASKED MRS. KOTLER FOR THE PHONE RECORDS THAT WERE SUPBPOENAED. KOTLER CLAIMED SHE HAD NO IDEA OF WHAT PHONE RECORDS/DISCOVERY I WAS SEEKING. AFTER AFFIRMATION I RECEIVED MY TRANSCRIPTS AND EASILY FOUND THE MOTION ORDER FOR THE PHONE RECORDS. THE RECORDS WERE NOT INCLUDED. I ALSO FOUND THE MULTIPLE MISSTATEMENTS OF TESTIMONY AND LAW COMMITTED BY THE PROSECUTOR WHICH I PREVIOUSLY POINTED OUT AND ASKED KOTLER TO RAISE. I ASKED KOTLER WHY SHE DID NOT RAISE THESE ISSUES. KOTLER STATED IN A LETTER DATED APRIL 19, 2004, "YOU CANNOT RAISE I.A.C. CLAIM ON DIRECT APPEAL. KOTLER CONTRADICTS HERSELF BY MENTIONING I.A.C. IN A BRIEF, BUT NEVER OFFICIALLY MAKES I.A.C. AN ARGUMENT. KOTLER NEVER TOOK THE TIME TO RESEARCH MY CLAIMS AND SIMPLY DISMISSED THEM. I PROVIDED KOTLER AN EXTENTION OF ONE OF HER CLAIMS COMPLETE WITH COMPANION CASES MORE FAVORABLE TO ME FOR INCLUSION INTO A SUPPLEMENTAL BRIEF. KOTLER CLAIMED, IN A LETTER DATED MAY 10, 2004, "YOU HAVE NO RIGHT ... TO JOIN INTO THE BRIEFS THAT I HAVE FILED. IN FACT THE COURT WILL NOT ACCEPT IT." IN A LETTER DATED APRIL 19, 2004, KOTLER STATES, "I DON'T REALLY THINK THAT IT IS A CONFRONTATION PROBLEM." I EXPANDED ON THIS ISSUE FOR HER BASED ON HER OPENING BRIEF IN WHICH SHE MAKES THE CLAIM ON DIRECT APPEAL. MRS. KOTLER BLEW ME OFF. COUNSEL ABANDONED ME AND MY WISHES.

FRESNO SUPERIOR COURT JUDGE CONKLIN CONCLUDED THAT MY ATTORNEY'S CONDUCT WAS DEFICIENT, HOWEVER DISPUTES THAT KOTLERS

CONDUCT WAS PREJUDICIAL. JUDGE CONKLIN WRONGLY APPLIED THE LAW TO THE FACTS IN MY CASE. ALL EXHIBITS ATTACHED. POINTS AND AUTHORITIES ATTACHED.

# POINTS
# AND
# AUTHORITIES

## GROUND 1 - 6

EVIDENCE WAS SO MINIMAL ON COUNT 2 AND THE PREJUDICE SO GREAT FROM COMBINING THE TWO COUNTS THAT CROSS-ADMISSIBILITY OF EVIDENCE CANNOT JUSTIFY JOINDER. OLD CHIEF V. UNITED STATES <1997> 519 U.S. 172,136 L. Ed. 2d 574,117 S. Ct. 664. THE PROSECUTOR DID NOT PURSUE INTENT AND INDENTITY WAS NOT A FACT IN DISPUTE.

**GROUND 2**

THE COURTS AND PROSECUTION CLEARLY VIOLATED THE DEFENDANTS 6TH AMENDMENT RIGHTS BY ALLOWING ONLY A LIMITED CROSS-EXAMINATION OF THE DISTRICT ATTORNEY'S EXPERT WITNESS,FRESNO POLICE SPECIALIST AND INVESTIGATOR DETECTIVE WELLS, WHEN THE LINE OF QUESTIONING NOT ALLOWED BY THE TRIAL COURT WOULD HAVE LIKELY AFFECTED THE JURY'S ACCEPTANCE OF THE DEFENSES THEORY. U.S. V. PRITCHET 699 F. 2d 317,321 <6 CIR. 198>, IN QUOTING U.S. V. VAN DYKE 14 F. 3d 415,422 <8TH CIR.> <199> "ERRONEOUS EXCLUSION OF EXPERT WITNESS' TESTIMONY REGARDING VIOLATIONS OF REGULATION WITH WHICH DEFENDANT CHARGED, NOT HARMLESS, BECAUSE EXCLUSION MAY HAVE CONTRIBUTED TO VERDICT WERE PROSECUTION ALLOWED TO ELABORATE ON REGULATION."

THIS CASE IS EXTREMILY SIMILAR IF NOT THE SAME AS U.S. V. VAN DYKE <SUPRA>. IT WAS THE PROSECUTIONS WITNESS' TESTIMONY EXCLUDED AND IF THE DEFENDANT WERE ALLOWED TO ELABORATE IN THE AREA OF HEAT OF PASSION CRIMES THE WITNESS' TESTIMONY WOULD HAVE LIKELY AFFECTED THE JURY'S ACCEPTANCE OF THE DEFENSE'S THEORY AND PRODUCED A MORE FAVORABLE OUTCOME. THIS TESTIMONY OF DETECTIVE WELLS WAS CRUCIAL TO THE DEFENSE IN SHOWING THAT IT WAS A "HEAT OF PASSION" CRIME. BY DENYING THE DEFENSE THE OPPORTUNITY TO ELICIT TESTIMONY IN DETAIL ABOUT THIS SPECIFIC AREA OF EXPERTISE KNOWN TO DETECTIVE WELLS DENIES MY 6TH AMENDMENT RIGHTS TO EXERCISE MY COMPULSORY RIGHT TO SHOW THAT THE WITNESS' TESTIMONY WOULD BE MATERIAL AND MAY HAVE CONTRIBUTED TO THE VERDICT. ENACTING

**POINTS & AUTHORITIES**
**GROUND 1**

THE TWO CRIMES DO NOT FALL WITHIN THE SAME CLASS OF CRIMES. IN MY CASE, COUNT ONE WAS AN ASSAULTIVE ACT AGAINST A PERSON. THE OFFENSE OF SHOOTING INTO AN INHABITED DWELLING, COUNT TWO, DOES NOT INVOLVE AN ASSAULT BECAUSE IT MAY BE COMMITTED EVEN IF THE OCCUPANTS OF THE RESIDENCE ARE ABSENT. A BUILDING IS CONSIDERED INHABITED FOR PURPOSES OF PENAL CODE 246 IF PEOPLE RESIDE AT THE HOUSE EVEN IF IT IS TEMPORARILY UNOCCUPIED. THE COUNTS DO NOT FALL WITHIN THE SAME CLASS OF CRIMES JUST BECAUSE THE OFFENSES ARE SET FORTH IN THE SAME CHAPTER OF THE PENAL CODE.

THE TWO CRIMES WERE NOT CONNECTED IN THEIR COMMISSION. IN MY CASE, THE OFFENSES WERE COMMITTED AT DIFFERENT TIMES, AGAINST DIFFERENT VICTIMS. JUDGE HOFF SENTENCED ME TO CONSECUTIVE TERMS AND HELD THAT THE TWO INCIDENTS WERE SEPARATE <7Rt-1131>. IN FACT JUDGE HOFF USES THE TERM "SEPARATE" SEVEN TIMES DURING SENTENCING. THE OFFENSE WITH WHICH I WAS CHARGED WERE NEITHER THE SAME CLASS OF TRANSACTION. THE COURT ABUSED ITS DISCRETION WHEN IT DENIED SEVERANCE.

EVEN IF THE COUNTS WERE PERMISSIVELY JOINED, SEVERANCE WAS NECESSARY TO PROTECT MY DUE PROCESS RIGHTS. MY CONVICTION MUST BE REVERSED BECAUSE THE COURTS FAILURE TO SEVER THE COUNTS MADE MY TRIAL UNFAIR. MISJOINDER OF COUNTS MAY RENDER A TRIAL SO UNFAIR AS TO VIOLATE THE FEDERAL DUE PROCESS CLAUSE. <u>PANZAVECCHIA V. WAINWRIGHT</u> <1981> 658 F. 2d 337,341-342; <u>BREELAND V. BLACKBURN</u> <1986> 786 F. 2d 1239,1241-1242; <u>PROCTOR V. BUTLER</u> <1987> 831 F. 2d 1251,1256-1257. THE SEVERANCE PROVISIONS OF PENAL CODE SECTION 954 REFLECT AN APPARENT LEGISLATIVE RECOGNITION THAT SEVERANCE MAY BE NECESSARY IN SOME CASE TO SATISFY THE OVERRIDING CONSTITUTIONAL GUARANTEE OF DUE PROCESS TO ENSURE A FAIR TRIAL. THE

PROCEDURAL RULES, A STATE MAY NOT ARBITRARILY LIMIT A DEFENDANTS ABILITY TO SECURE THE TESTIMONY OF A FAVORABLE WITNESS. WASHINGTON V. TEXAS 388 U.S. 14<1967> Id AT 23 THE SUPREME COURT HELD THAT THE STATE VIOLATED COMPULSORY PROCESS CLAUSE BECAUSE IT ARBITRARILY DENIED THE DEFENDANT THE RIGHT TO PRESENT A MATERIALLY FAVORABLE WITNESS WHO WAS BOTH MENTALLY AND PHYSICALLY CAPABLE OF TESTIFYING ABOUT THE EVENTS HE HAD PERSONALLY OBSERVERED. E.g. U.S. V. BLUM 62 F. 3d 63,69 <2d CIR. 1995> "NOT HARMLESS BECAUSE EXCLUSION MAY HAVE CONTRIBUTED TO VERDICT WHERE WITNESS' TESTIMONY CRUCIAL TO GOVERNMENTS CASE." IN CHAPMAN V. CALIFORNIA <1967> 386 U.S. 18,17 L. Ed. 2d 705,87 S. Ct. 824 "SUCH ERRORS WILL BE FOUND PREDUDICIAL UNLESS PROSECUTION CAN SHOW BEYOND A REASONABLE DOUBT THAT THE ERROR DID NOT CONTRIBUTE TO THE VERDICT."

WHETHER ROOTED DIRECTLY IN THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT, CHAMBERS V. MISSISSIPPI 410 U.S. 284 <1973> OR THE COMPULSORY PROCESS OR CONFRONTATION CLAUSES OF THE 6TH AMENDMENT, WASHINGTON V. TEXAS 388 U.S. 14,23 <1967>; DAVIS V. ALASKA 515 U.S. 308 <1974> THE CONSTITUTION GUARANTEES CRIMINAL DEFENDANTS, "A MEANINGFUL OPPORTUNITY TO PRESENT A COMPLETE DEFENSE," <CITES> CRANE V. KENTUCKY <1986> 476 U.S. 687 <106 S. Ct. 2142,90 L. Ed. 2d 636>.

**GROUND 3**

THE TEST OF PREJUDICE IS WHETHER IT IS "REASONABLY PROBABLE THAT A RESULT MORE FAVORABLE TO THE DEFENDANT WOULD HAVE OCCURRED HAD THE PROSECUTOR REFRAINED FROM THE COMMENT ATTACKED BY THE DEFENDANT."

THE PROSECUTOR, MR. PETERSON, MISSTATES MY TESTIMONY TO THE JURY DURING CLOSING ARGUMENTS. MR. PETERSON COACHED A GOVERNMENT WITNESS. MR. PETERSON STATES HIS OPINION TO THE JURY. FINALLY, MR. PETERSON KEEPS TESTIMONIAL EVIDENCE FAVORABLE TO MY DEFENSE OUT OF THE TRIAL.

THE PROSECUTORS MISSTATEMENTS OF MY TESTIMONY TO THE JURY

DENOUNCED MY CREDIBILITY WHICH IS NOT ONLY IMPROPER CONDUCT ON THE PART OF THE PROSECUTOR, BUT ALSO VIOLATED MY 14TH AMENDMENT RIGHT TO DUE PROCESS ALONG WITH THE 6TH AMENDMENT RIGHT TO CONFRONT ANY HOSTILE WITNESS AS STATED IN THE CONFRONTATION CLAUSE. U.S. V. FOSTER 874 F. 2d 491,494-95 <9TH CIR. 1988> DIRECT MISREPRESENTATION TO COURT THAT WITNESSES HAD NOT BEEN GRANTED IMMUNITY REVERSIBLE ERROR WHERE CASE RESTED ON CREDIBILITY OF WITNESSES AND U.S. V. FORLORMA 94 F. 3d 91,96 <2d CIR. 1996> PROSECUTORS REPEATED MISSTATEMENTS REVERSIBLE ERROR WHERE TRIAL COURTS RULING AND CURATIVE INSTRUCTIONS INSUFFICIENT TO UNDO EFFECT OF HIGHLY PREJUDICIAL INACCURATE ARGUMENT.

IN MY CASE I ADMITTED INVOLVEMENT WITH COUNT ONE, HOWEVER, TESTIFIED THAT IT WAS DONE UPON A SUDDEN QUARREL, IN THE HEAT OF PASSION. THE JURY WAS TO DECIDE THIS CASE BASED ON MY CREDIBILITY. MY CASE WAS NOT ABOUT GUILT OR INNOCENCE. IT WAS MOSTLY ABOUT PUNISHMENT. IT WAS MY CREDIBILITY THAT WAS GOING TO DETERMINE PUNISHMENT.

PROSECUTIONAL MISCONDUCT NEED NOT BE INTENTIONAL BEFORE IT CONSTITUTES REVERSIBLE ERROR. IN U.S. V. YOUNG 470 U.S. 1,11-12 <1985> STATEMENTS MUST BE VIEWED IN CONTEXT OF ENTIRE PROCEEDING TO DETERMINE WHETHER CONDUCT AFFECTED FAIRNESS OF TRIAL. IN CHAPMAN V. CALIFORNIA <1967> 386 U.S. 18,17 L. Ed. 2d 705 87 S. Ct. 824, APPLIES TO CONSTITUTIONAL ERRORS TO BE FOUND PREJUDICIAL UNLESS PROSECUTION CAN SHOW BEYOND A REASONABLE DOUBT THAT THE ERROR DID NOT CONTRIBUTE TO THE VERDICT.

UNDER CROSS-EXAMINATION MR. MURANE REVEALS DETAILS ON HOW THE INTERVIEW PROCESS WAS CONDUCTED AT MR. PETERSON'S OFFICE. IT IS DURING THIS INTERVIEW PROCESS THAT MR. PETERSON'S CONDUCT NEEDS TO BE EXAMINED.

ON OCTOBER 9,2001, MR. MURANE HAS AN INTERVIEW WITH DETECTIVE SOLOMAN WELLS. MR. MURANE OFFERS TESTIMONY ON COUNT ONE, BUT DOES NOT

MENTION ANYTHING ABOUT COUNT TWO. ON DECEMBER 28,2001 MR. MURANE HAS AN INTERVIEW AT MR. PETERSON'S OFFICE. MR. MURANE TESTIFY'S THAT THE INTERVIEW PROCESS WAS CONDUCTED UNPROFESSIONALLY <4Rt-518>.

MR. PETERSON ALSO GIVES THE JURY HIS OPINION BY STATING "WELL LET ME GIVE YOU WHAT I THINK IS AN EXAMPLE OF ADEQUATE PROVOCATION" <7Rt-1039>. HE GOES ON TO GIVE TWO MISLEADING EXAMPLES <7Rt-1039-1040>.

MR. PETERSON WAS ABLE TO OBJECT AND SUCCESSULLY SUPPRESS TESTIMONIAL EVIDENCE FAVORABLE TO MY DEFENSE <5Rt-614>. THIS TESTMONIAL EVIDENCE HAD A DIRECT BEARING ON MY PUNISHMENT. IT WAS MATERIAL AND THE DIFFERENCE BETWEEN A 2nd DEGREE MURDER AND A MANSLAUGHTER CONVICTION.

THIS CASE IS NOT UNLIKE U.S. V. VAN DYKE 14 F. 3d. 415,422 <8TH CIR. 1994> "ERRONEOUS EXCLUSION OF EXPERT WITNESS' TESTIMONY REGARDING VIOLATIONS OF REGULATION WITH WHICH DEFENDANT CHARGED, NOT HARMLESS, BECAUSE EXCLUSION MAY HAVE CONTRIBUTED TO VERDICT WERE PROSECUTION ALLOWED TO ELABORATE ON REGULATION."

U.S. V. BAGELY 473 U.S. 667 <1985> THE COURT HELD THAT EVIDENCE IS MATERIAL IF THERE IS A REASONABLE PROBABILITY THAT DISCLOSURE OF THE EVIDENCE WOULD HAVE CHANGED THE OUTCOME OF THE PROCEEDING. SEE BRADY V. MARYLAND 373 U.S. 83 <1963> AND U.S. V. AGURS 427 U.S. 97,107-11<1976>.

**GROUND 4**

IN MY CASE THERE ARE FOUR SEPARATE LEGITIMITE INSTANCES THAT ARE "CLEAR" AND "OBVIOUS" THAT PLAIN ERROR OCCURRED. ALL FOUR INSTANCES HAVE TO DO WITH PROSECUTIONAL MISCONDUCT.

IN BRECHT V. ABRAHAMSON 113 S. Ct. 1710 <1993> THE SUPREME COURT HELD HABEAS CORPUS RELIEF FOR TRIAL ERRORS INVOLVING PROSECUTIONAL MISCONDUCT SHOULD BE GRANTED IF THE ERROR "HAD SUBSTANTIAL AND INJURIOUS EFFECT OF INFLUENCE IN DETERMINING THE JURY'S VERDICT." THE BRECHT COURT ID AT 1722 n. 9, ALSO INDICATED THAT A PATTERN OF

PROSECUTIONAL MISCONDUCT MAY "INFECT THE INTEGRITY OF THE PROCEEDINGS" AND "WARRANTS THE GRANT OF HABEAS RELIEF EVEN IF IT DID NOT SUBSTANTIALLY AFFECT THE JURY'S VERDICT."

YOU KNOW FROM GROUND 3 SUPPORTING FACTS THE FOUR INSTANCES OF PROSECUTIONAL MISCONDUCT THAT WERE NOT CORRECTED. NOT ONLY WAS THERE A PATTERN OF PROSECUTIONAL MISCONDUCT BUT MY CONSTITUTIONAL RIGHTS OF THE 14TH AMENDMENT AND 6TH AMENDMENT WERE VIOLATED SUBSTANTIALLY PREJUDICING THE OUTCOME OF MY TRIAL.

IN U.S. V. KERR 981 F. 2d 1050,1053-54 <9TH CIR. 1992> PLAIN ERROR WHEN PROSECUTOR USED PERSONAL OPINION TO BOLSTER THE CREDIBILITY OF GOVERNMENT WITNESS. MY CASE IS A MIRROR TO U.S. V. KERR <SUPRA> EXCEPT THAT THE PROSECUTOR USED HIS MISSTATEMENTS OF MY TESTIMONY AND FACTS TO CORRUPT MY CREDIBILITY.

IN U.S. V. SARO 24 F. 3d 283,286 <D.C. CIR. 1994> "PLAIN ERROR IS SO PLAIN THAT TRIAL JUDGE AND PROSECUTOR WERE DERELICT IN COUNTENANCING IT." U.S. V. KNOWLES 29 F. 3d 947,951 <5TH CIR. 1994> ERRORS OF CONSTITUTIONAL DIMINSTION NOTICED MORE FREELY THAN LESS SERIOUS ERRORS. FED. R. CRIM. P. 52 (b) STATES "PLAIN ERRORS OR DEFECTS AFFECTING SUBSTANTIAL RIGHTS MAY BE NOTICED ALTHOUGH THEY WERE NOT BROUGHT TO THE ATTENTION OF THE COURT."

**GROUND 5**

THERE WAS A FUNDAMENTAL BREAKDOWN IN OUR ATTORNEY CLIENT RELATIONSHIP. LIES WERE TOLD, ALTERNATIVE STRATEGIES WERE NOT UNDERTAKEN, AND BASIC DUTIES WERE NOT PERFORMED BY MY COUNSEL.

MR. FALCON, MY ATTORNEY, FAILED TO OBJECT TO OBVIOUS PROSECUTIONAL MISCONDUCT. MR. FALCON FAILED TO OBJECT TO PROSECUTION'S CLOSING ARGUMENTS IN WHICH THE PROSECUTION MISSTATES MY TESTIMONY AND OFFERS THE JURY HIS OPINION. I ASKED MR. FALCON TO OBJECT, HE STATES, "NO OBJECTIONS ARE ALLOWED DURING CLOSING ARGUMENTS."

I CLAIMED AN AFFAIR TOOK PLACE AND COULD PROVE AN AFFAIR IF I COULD VIEW THE VERIZON WIRELESS PHONE RECORDS. MR. FALCON TOLD ME THE PHONE RECORDS WERE RELEASED HOWEVER JUDGE HOFF INSTRUCTED HIM THAT I WAS NOT TO VIEW THESE PHONE RECORDS. AFTER DIRECT APPEAL WAS AFFIRMED I RECEIVED MY TRIAL TRANSCRIPTS AND VIEWED THE ORDER RELEASING THESE RECORDS. THE ORDER MAKE NO MENTION THAT I'M NOT TO VIEW THESE RECORDS.

MR. FALCON RELIED SOLELY ON DETECTIVE WELLS TESTIMONY FOR HEAT OF PASSION CRIMES. JUDGE HOFF WOULD NOT ALLOW MR. FALCON TO ASK DETECTIVE WELLS QUESTIONS IN THIS AREA. MR. FALCON DID NOT ENTERTAIN OR PURSUE AN ALTERNATIVE STRATEGY OR TACTIC.

MR. FALCON FAILED TO RENEW THE SEVERANCE MOTION AT THE END OF THE TRIAL.

LOPEZ V. SCULLY 58 F. 3d. 38 <1995> DEMONSTRATION THAT SOME PLAUSIBLE ALTERNATIVE DEFENSE STRATEGY OR TACTIC MIGHT HAVE BEEN PURSUED AND THAT THE ALTERNATIVE DEFENSE WAS INHERENTLY IN DIRECT CONFLICT WITH OR NOT UNDERTAKEN DUE TO THE ATTORNEY'S OTHER LOYALTIES OR INTERESTS, ESTABLISHING 6TH AMENDMENT VIOLATION.

SEE STRICKLAND V. WASHINGTON 466 U.S. 688 <1984> AND

CUYLER V. SULLIVAN 466 U.S. 335 <1980>.

**GROUND 6**

MY COURT APPOINTED APPELLATE ATTORNEY, MRS. KOTLER, OF BALIN AND KOTLER WAS COMPLETELY OVERWHELMED, UNDER STAFFED, UNFAMILIAR WITH MY CASE, AND IGNORED ISSUES STRONGER THAN THOSE SHE PRESENTED. MRS. KOTLER EFFECTIVELY BOLTED THE DOOR TO MY EQUAL JUSTICE.

IT IS POSSIBLE TO RAISE AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM BASED ON COUNSELS FAILURE TO RAISE A PARTICULAR CLAIM. I BELIEVE THIS GOES FURTHER THAN A CONFLICT OF INTEREST, FOR MRS. KOTLER IT WAS A CONFLICT WITH HER CLIENT, ME.

I WAS INVOLVED WITH MY APPEAL FROM THE BEGINNING. I TRIED TO STAY ABREAST OF THE SITUATION. I BELIEVE MRS. KOTLER WAS NOT ACCUSTOM TO HER CLIENTS BEING HANDS ON. MY REQUESTS WENT WITHOUT NOTICE. I BEGAN CORRESPONDENCE VIA CERTIFIED MAIL ONLY. IT IS AT THIS POINT THAT I BELIEVE MRS. KOTLER SHUT ME OUT. MRS. KOTLER ASKED ME TO NO LONGER SEND HER MAIL CERTIFIED BECAUSE IT WAS INCONVENIENT FOR HER TO SIGN FOR IT. I ASKED FOR MY TRIAL TRANSCRIPTS AND MRS. KOTLER DENIED ME. MRS. KOTLER CLAIMED TO HAVE NO SECRETARIAL HELP AND WORKS ALONE. I ASKED MRS. KOTLER FOR HELP AND ALL MY IMPORTANT REQUESTS EITHER WERE DENIED OR SHE CLAIMED TO HAVE NO IDEA ABOUT WHAT I WAS ASKING FOR.

I BELIEVE THAT DUE TO MRS. KOTLER BEING UNDER STAFFED, OVERWHELMED WITH HER CASE LOAD, AND STRESSED OUT WITH MY REQUESTS THAT SHE JUST DECIDED TO SHUT ME OUT AND ULTIMATELY BLEW ME OFF.

MRS. KOTLER PROVIDED LESS EFFECTIVE ADVOCACY FOR AN INDIGENT. MRS. KOTLER PROBABLY MADE THE COURT MORE LIKELY TO RULE AGAINST ME, THE INDIGENT, THAN IF THE COURT HAD SIMPLY RECEIVED A WENDE BRIEF SMITH V. ROBBINS 120 S. Ct. 746,528 U.S. 273 <2000>.

HAD MRS. KOTLER FILED A WENDE BRIEF AT LEAST THE COURTS WOULD HAVE PROVIDED MRS. KOTLER WITH "ARGUABLE ISSUES" TO BRIEF. MRS. KOTLER ONLY PURSUED ISSUES THAT MY TRAIL COUNSEL PRESENTED TO HER INSTEAD OF RESEACHING ALL CLAIMS AVAILABLE TO HER. I BELIEVE THIS WAS BECAUSE MRS. KOTLER WAS UNDERSTAFFED.

MRS. KOTLER BELIEVED THAT SHE WAS GOING TO BE ABLE TO DO A MEDIOCRE JOB JUST TO FULFILL HER OBLIGATION UNDER THE LAW. ONCE I BEGAN TO PRESS MRS. KOTLER FOR MORE THAN SHE WAS "ACCUSTOM" TO DOING SHE BEGAN TO SHUT ME OUT AND HER PERFORMANCE FELL BELOW THE STANDARD OF REASONABLENESS REQUIRED TO SATISFY THE FIRST PRONG OF STRICKLAND V. WASHINGTON 466 U.S. 688 <1984>.

MRS. KOTLER UNREASONABLY FAILED TO DISCOVER/RESEARCH THE PROSECUTIONAL MISCONDUCT EVEN AFTER I REVEALED TO HER THE LOCATION OF THE MISCONDUCT WITHIN THE TRIAL TRANSCRIPTS. MRS. KOTLER CLAIMED "YOU HAVE NO RIGHT TO .... JOIN INTO THE BRIEFS THAT I HAVE FILED. IN FACT THE COURTS WILL NOT ACCEPT IT." ALL I WAS ASKING FOR MRS. KOTLER TO DO IS FILE A SUPPLEMENTAL BRIEF WITH THE CLAIMS THAT I BRIEFED AND PROVIDED FOR HER BECAUSE SHE WAS OVERWHELMED AND UNDERSTAFFED.

FURTHERMORE, ANYBODY FILING A WENDE BRIEF IS AFFORDED THE OPPORTUNITY TO SUBMIT A SUPPLEMENTAL BRIEF. I CONTEST THAT EVERY APPELLANT SHOULD BE AFFORDED THAT SAME OPPORTUNITY.

AN INDIGENT, AN ALL CASES, HAS A RIGHT TO HAVE AN ATTORNEY, ZEALOUS FOR THE INDIGENTS INTERESTS, EVALUATE HIS CASE, AND ATTEMPT TO DISCERN NONFRIVOLOUS ARGUMENTS UNDER THE 14TH AMENDMENT.

IN <u>CUYLER V. SULLIVAN</u> 466 U.S. 335 <1980> THE SUPREME COURT RULED THAT A DEFENDANT CAN DEMONSTRATE A 6TH AMENDMENT VIOLATION BY SHOWING:

1.) THAT DEFENSE COUNSEL WAS ACTIVELY REPRESENTING CONFLICTING INTERESTS, 2.) THAT THE CONFLICT HAD AN ADVERSE EFFECT ON SPECIFIC INSTANCES OF COUNSELS PERFORMANCE.

I CALL INTO QUESTION THE ENTIRE PROCESS USED BY THE CENTRAL CALIFORNIA APPELLATE PROGRAM WHICH PROVIDE APPELLANTS WITH APPELLATE ATTORNEY'S. THE PROVISIONS TAKEN BY THIS PROGRAM ARE NOT ENOUGH TO DISCERN THE QUALITY OF THE ATTORNEY'S APPOINTED TO APPELLATES. FOR EXAMPLE MY APPOINTED ATTORNEY, MRS. KOTLER, ASKED FOR TIME EXTENSIONS DUE TO HER <u>LONE</u> COMPUTER BEING DOWN WITH A VIRUS. HAD THE APPELLATE PROGRAM PROPERLY INSPECTED MRS. KOTLER'S OFFICE AND RESOURCES AVAILABLE TO HER THEN THEY COULD HAVE SEEN THAT MRS. KOTLER WAS UNDERSTAFFED AND COULD NOT HANDLE HER CASE LOAD. THIS PROGRAM HAS A

PROPHYLACTIC FRAMEWORK USED TO SAFEGUARD MY RIGHT TO APPELLATE COUNSEL THAT FAILED ME. I CALL INTO QUESTION THE LEGITIMACY OF THE C.C.A.P.

# INDEX TO EXHIBIT(S)


| HABEAS CLAIM | DOCUMENT(S) TITLE | PAGE(S) |
|---|---|---|
| GROUND 6 | LETTERS FROM MRS. KOTLER (APPELLATE COUNSIL) | 1-5 |
| GROUND 6 | APPELLANT OPENING BRIEF | 6-7 |
| GROUND 6 | LETTERS TO MRS. KOTLER (APPELLATE COUNSIL) | 8-33 |
| GROUNDS | MOTION FOR DISCOVERY OF PHONE RECORDS | 34-36 |
| GROUND 5 | EXCERPT FROM RESPONDANTS BRIEF REGARDING TRIAL COUNSIL | 37-38 |
| GROUND 5 | RECEIPT AND LETTER SENT TO TRIAL COUNSIL | 39-41 |
| GROUND 3 | DEFENDANTS TESTIMONY | 42-43 |
| GROUND 3 | PROSECUTOR'S MISSTATEMENTS OF LAW AND DEFENDANTS TESTIMONY | 44-47 |
| GROUND 3 | TESTIMONY OF GOVERNMENTS WITNESS | 48-58 |
| GROUND 2 | CROSS-EXAMINATION OF FRESNO POLICE SPECIALIST SOLOMAN WELLS | 59-61 |
| GROUND 1 | DENIAL OF SEVERANCE MOTION | 62-64 |

GROUND SIX

# LETTERS FROM MRS. KOTLER

# BALIN & KOTLER, LLP

Attorneys at Law

**William M. Balin**
SBN: 59104
345 Franklin Street
San Francisco, CA 94102

Telephone: (415) 241-7360
Facsimile: (415) 252-8048

***Eileen S. Kotler**
SBN: 83563
1750 Francisco Boulevard
Pacifica, CA 94044

Telephone: (650) 359-1330
Facsimile: (650) 359-2567

May 10, 2004

Brian Douglas Martin; T94632
Corcoran State Prison
P.O. Box 3461
Corcoran, CA 93212

Re: *People v. Martin*
Court of Appeal No. F043105

Dear Mr. Martin:

I have reviewed your letter of April 29, 2004. I understand the facts of the case, however, it was the jury who had to judge them.

At this point, the case is fully briefed. I raised the issues that I thought were appropriate and were supported by the record on appeal. Although I don't agree with your assessment of the case and do not feel that the prosecutor committed misconduct, I have not abandoned you and will continue to advocate on your behalf. You have no right to file a brief on your own behalf and join into the briefs that I have filed. In fact, the Court of Appeal won't accept it.

I have no idea what discovery you are seeking.

Regarding your letter of April 4, 2003, I cited Kincade in your Opening Brief. Since that time, the 9th Circuit has reheard the case and withdrawn the opinion. It can no longer be cited. Regarding your letter of April 6, I responded on April 19 and I am enclosing a copy of that letter.

I'm sorry that you don't approve of my performance. You may file a petition for writ of habeas corpus in the Superior Court and allege that you received ineffective assistance of counsel from both your trial attorney and me. I am enclosing the form for your information.

Sincerely,
BALIN & KOTLER, LLP
Eileen S. Kotler
EILEEN S. KOTLER
ESK/
enc.

Please reply to ☐ San Francisco ☑ Pacifica office.
*Certified as an Appellate Specialist by The State Bar of California Board of Legal Specialization

2 OF 64

ORIGINAL



# BALIN & KOTLER, LLP

Attorneys at Law

**William M. Balin**
SBN: 59104
345 Franklin Street
San Francisco, CA 94102

Telephone: (415) 241-7360
Facsimile: (415) 252-8048

***Eileen S. Kotler**
SBN: 83563
1750 Francisco Boulevard
Pacifica, CA 94044

Telephone: (650) 359-1330
Facsimile: (650) 359-2567

February 10, 2005

Brian Douglas Martin; T94632
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA 93960

Re: *People v. Martin*
Court of Appeal No. F043105

Dear Mr. Martin:

I received a letter from your mom telling me that you had been transferred. Thank you for letting me know. At this point, your case has been fully briefed and we are awaiting a decision. I will let you know what happens.

I will be out of the office until February 27, 2005 but available after that time if you have any questions. Please don't send your letters by certified mail. I receive and read your letters, however, if they are certified and I am not in the office, your letters are delayed until I get to the post office to pick them up.

Very truly yours,

BALIN & KOTLER, LLP

Eileen S. Kotler

EILEEN S. KOTLER
ESK/

Please reply to ☐ San Francisco ☒ Pacifica office.
*Certified as an Appellate Specialist by The State Bar of California Board of Legal Specialization

3 of 64

# BALIN & KOTLER, LLP

Attorneys at Law

**William M. Balin**
SBN: 59104
345 Franklin Street
San Francisco, CA 94102

Telephone: (415) 241-7360
Facsimile: (415) 252-8048

***Eileen S. Kotler**
SBN: 83563
1750 Francisco Boulevard
Pacifica, CA 94044

Telephone: (650) 359-1330
Facsimile: (650) 359-2567

April 21, 2004

Brian Douglas Martin; T94632
Corcoran State Prison
P.O. Box 3461
Corcoran, CA 93212

Re: *People v. Martin*
Court of Appeal No. F043105

Dear Mr. Martin:

Today, I received your letter in which you asked me to send V. Martin a copy of the briefs and to send you a copy of the transcripts. I am willing to send Ms. Martin a copy of the Opening and Reply Briefs, however, I do not have an extra copy of the Respondent's Brief. As I have mailed you a copy of that brief, it will be necessary for you to mail her your copy.

As I explained to you in my initial letter, I only have one copy of the trial transcripts and I need them until your appeal is complete. I work alone and do not have secretarial help and therefore, I cannot copy transcripts for clients. Your transcripts are approximately 1600 – 1800 pages. If your family or friends want to pick up the transcripts at my office, I will release the transcripts for the day so that they can have copies made locally. Please have them call me to make arrangements.

Sincerely,

BALIN & KOTLER, LLP

Eileen S. Kotler

EILEEN S. KOTLER
ESK/

Please reply to ☐ San Francisco ☑ Pacifica office.
*Certified as an Appellate Specialist by The State Bar of California Board of Legal Specialization

# BALIN & KOTLER, LLP

Attorneys at Law

**William M. Balin**
SBN: 59104
345 Franklin Street
San Francisco, CA 94102

Telephone: (415) 241-7360
Facsimile: (415) 252-8048

***Eileen S. Kotler**
SBN: 83563
1750 Francisco Boulevard
Pacifica, CA 94044

Telephone: (650) 359-1330
Facsimile: (650) 359-2567

April 19, 2004

Brian Douglas Martin; T94632
Corcoran State Prison
P.O. Box 3461
Corcoran, CA 93212

Re: *People v. Martin*
Court of Appeal No. F043105

Dear Mr. Martin:

I have received your letter and supplemental brief. I have a few comments. First, you cannot raise an ineffective assistance claim on direct appeal. If you are alleging that your trial attorney failed to call an expert on heat of passion, you would have to show by declaration 1) who the expert is and what he would have said; 2) such testimony would have been permitted by the trial court and 3) had such testimony been permitted, it would be likely that your trial result would have been different. This would be shown in a petition for writ of habeas corpus filed in the trial court. If you think you can meet these criteria and you want me to send you the form, I will be happy to do so.

Second, the issue in your direct appeal was whether expert testimony was necessary for the jury's understanding of a heat of passion defense. I included the case of *People v. Shaver*, not to argue that the law was correct, but rather to show the different ways that the courts have decided the issue in order to argue that expert testimony was necessary to clarify the issue for the jury. For that reason, I will not ask the court to disregard *Shaver*.

Third, I don't really think that it is a confrontation problem. Your attorney was asking the officer to testify as an expert on your behalf. He wasn't cross-examining him on that issue and I don't think that the denial of confrontation or cross-examination comes into play. I have looked at *Jennings v. Superior Court* and I don't think it supports your position. In *Jennings*, the defendant was denied his right to cross-examine the officer on his story and denied a right for a continuance in order to bring in a material witness who would establish an affirmative defense.

Please contact me if you have any questions.

Sincerely,

Eileen S. Kotler

EILEEN S. KOTLER

Please reply to ☐ San Francisco ☒ Pacifica office.

*Certified as an Appellate Specialist by The State Bar of California Board of Legal Specialization

5 of 64

# APPELLANTS OPENING BRIEF

L.Ed.2d 636], the petitioner contended during trial that his confession was impermissibly coerced. Before the trial, the court held that the confession was voluntarily obtained. The Commonwealth's case rested on the testimony of Crane's uncle who was present during the holdup and murder and during Crane's confession. At trial, the defense attempted to introduce evidence regarding the circumstances under which the confession was obtained to cast doubt on the validity of petitioner's confession. The court excluded the testimony because the issue of voluntariness had been previously determined.

The The United States Supreme Court disagreed and, reversing Crane's conviction, held that the exclusion of the circumstances of petitioner's confession violated his right to present a defense.

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi, supra,* or the Compulsory Process or Confrontation clauses of the Sixth Amendment, *Washington v. Texas* 388 U.S. 14, 23 (1967); *Davis v. Alaska,* 515 U.S. 308 (1974) the Constitution guarantees criminal defendants, 'a meaningful opportunity to present a complete defense. (cites.) (*Crane v. Kentucky, supra,* 476 U.S. at p. 687.)

Like the situation in *Crane*, the admission of evidence regarding the indicia that an act was committed in the heat of passion was central to appellant's defense.



7 of 6

# LETTERS TO MRS. KOTLER

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Eileen S. Kotler
Balin & Koller, LLP
1750 Francisco Blvd.
Pacifica, CA 94044

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
x Eileen Kotler ☐ Agent ☒ Addressee

B. Received by (Printed Name) EILEEN S KOTLER
C. Date of Delivery 4/19/04

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7003 1680 0002 4297 3165

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1540

7003 1680 0002 4297 3165

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

PACIFICA CA 94044

| | |
|---|---|
| Postage | $ $0.83 |
| Certified Fee | $2.30 |
| Return Reciept Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.88 |

Postmark Here: FRESNO, CA MODWIND USPS APR 19 2004

Sent To Eileen S. Kotler
Street, Apt. No.; or PO Box No. 1750 Francisco Blvd
City, State, ZIP+4 Pacifica CA 94044

PS Form 3800, June 2002 See Reverse for Instructions

9 of 6

BRIAN DOUGLAS MARTIN T-94632
C.S.P. 3A02-221 UP
P.O. BOX 3461
CORCORAN, CA 93212-3461

EILEEN S. KOTLER
BALIN & KOTLER, LLP
1750 FRANCISCO Blvd.
PACIFICA, CA 94044
APRIL 6, 2004

{ SUPPLEMENTAL BRIEF; and Appellant's intent not to include the case of People v. Shaver nor its argument in the Reply Brief }

DEAR EILEEN KOTLER,

UPON FURTHER REVIEW OF THE RESPONDANTS BRIEF I HAVE COME TO THE CONCLUSION THAT AN *INEFFECTIVE ASSISTANCE OF COUNSEL* AND THE *CONFRONTATION CLAUSE* WOULD BOTH BE VIABLE ARGUMENTS.

IN <u>STRICKLAND V. WASHINGTON</u>, THE SURPREME COURT ESTABLISHED A TWO-PRONG TEST TO EVALUATE ASSISTANCE CLAIMS 466 U.S. 668 (1984). TO OBTAIN REVERSAL OF A CONVICTION THE DEFENDANT MUST PROVE:

(1) THAT COUNSELS PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS.

THIS OCCURRED WHEN DEFENSE COUNSEL FAILED TO CALL OUR OWN EXPERT WITNESS IN THE AREA OF "HEAT OF PASSION CRIMES" KNOWING THAT DEFENSE COUNSEL HAD QUESTIONS REGARDING INDICIA OF "HEAT OF PASSION CRIMES." THE PROOF OF THIS IS IN COUNSELS LINE OF QUESTIONING IN WHICH THE COURT SUSTAINED THE PROSECUTORS OBJECTIONS TO THE DEFENSE ATTEMPT TO ELICIT TESTIMONY FROM THE DISTRICT ATTORNEY'S WITNESS, FRESNO POLICE SPECIALIST AND HOMICIDE INVESTIGATOR SOLOMON WELLS. DEMONSTRATION THAT

SOME PLAUSIBLE ALTERNATIVE DEFENSE STRATEGY OR TACTIC MIGHT HAVE BEEN PURSUED AND THAT THE ALTERNATIVE DEFENSE WAS INHERENTLY IN DIRECT CONFLICT WITH OR NOT UNDERTAKEN DUE TO THE ATTORNEYS OTHER LOYALTIES OR INTERESTS. ESTABLISHING 6TH AMEND. VIOLATION WHERE ACTUAL CONFLICT OF INTEREST ADVERSELY AFFECTED MY LAWYERS PERFORMANCE. LOPEZ V. SCULLY 58 F. 3d. 38 (1995)

FURTHERMORE, IN THE RESPONDANTS BRIEF (PG. 14). IT STATES ["DEFENSE COUNSEL COULD HAVE ARGUED, THAT THE NUMBER OF TIMES JENNIFER WAS STRUCK WAS INDICATIVE OF APPELLANTS REASON BEING OBSCURED BY "HEAT OF PASSION." THIS WOULD HAVE BEEN A SIMPLE ARGUMENT BASED ON THE FACTS.]

DEFENSE COUNSEL COULD HAVE AND FAILED TO ARGUE THE ISSUES BASED ON THE FACTS. THIS PERFORMANCE AT TRIAL COUPLED WITH THE NEGLECT TO CALL AN EXPERT WITNESS IN THE AREA OF "HEAT OF PASSION CRIMES" CLEARLY SHOWS ERRONEOUS AND INEFFECTIVE ASSISTANCE OF COUNSEL.

(2) THAT COUNSELS DEFICIENT PERFORMANCE PREJUDICED THE DEFENDANT RESULTED IN AN UNRELIABLE OR FUNDAMENTALLY UNFAIR OUTCOME OF THE PROCEEDING.

THE DEFENDANT WAS PREJUDICED WHEN THE JURY WAS NOT ALLOWED THE OPPORTUNITY TO HEAR TESTIMONY FROM FRESNO POLICE SPECIALIST AND INVESTIGATOR SOLOMON WELLS IN THE AREA OF "HEAT OF PASSION CRIMES." BASED ON COUNSELS PERFORMANCE AND NEGLECT AND DUE TO THE TOTALITY OF THE CIRCUMSTANCES THE DEFENDANT WAS DEPRIVED OF A FAIR AND RELIABLE OUTCOME.

THE TRIAL COURT VIOLATED THE DEFENDANTS 6TH AMENDMENT RIGHTS UNDER THE CONFRONTATION CLAUSE WHEN IT PRECLUDED APPELLANT FROM CROSS EXAMINATION OF DISTRICT ATTORNEY'S EXPERT WITNESS

CONFRONTATION CLAUSE: THE 6TH AMENDMENT CONFRONTATION CLAUSE PROVIDES A CRIMINAL DEFENDANT THE RIGHT TO DIRECTLY ENCOUNTER HOSTILE WITNESSES, THE RIGHT TO CROSS-EXAMINE HOSTILE WITNESSES, AND THE RIGHT TO BE PRESENT AT ANY STAGE OF THE TRIAL WHICH WOULD ENABLE HE/SHE TO EFFECTIVELY CROSS-EXAMINE HOSTILE WITNESSES. BY GUARANTEEING THESE RIGHTS, THE CONFRONTATION CLAUSE SERVES TO "ENSURE THE RELIABILITY OF THE EVIDENCE AGAINST A CRIMINAL DEFENDANT BY SUBJECTING IT TO RIGOROUS TESTING" IN AN ADVERSARIAL PROCEEDING. POINTER V. TEXAS, 38 U.S. 400, 403 (1965) WHEN CROSS EXAMINING A WITNESS THE DEFENDANT MUST BE PERMITTED TO TEST BOTH THE WITNESS'S CREDIBILITY AND THE WITNESS'S KNOWLEDGE OF THE FACTS BEARING ON THE DEFENDANTS GUILT OR INNOCENSE.

FACTS

APPELLANT ASKED WHETHER FRESNO POLICE SPECIALIST SOLOMON WELLS WAS FAMILIAR WITH THE TERM "HEAT OF PASSION." THE DISTRICT ATTORNEY OBJECTED ON THE GROUNDS THAT THE QUESTION CALLED FOR A LEGAL CONCLUSION AND WAS NOT RELEVANT

AND THE COURT SUSTAINED THE OBJECTION. NEXT APPELLANT ASKED, "WITH REGARD TO HOMICIDE INVESTIGATIONS, DETECTIVE WELLS, WHAT TYPE OF OBJECTIVE INDICIA ARE THERE TO DEMONSTRATE HEAT OF PASSION TYPE CRIMES." AGAIN, THE PROSECUTOR OBJECTED THAT THE QUESTION CALLED FOR A LEGAL CONCLUSION AND AGAIN THE COURT SUSTAINED THE OBJECTION. THE COURT DENIED APPELLANTS REQUEST FOR A SIDEBAR CONFERENCE. REF. OPENING BRIEF (PG. 27-28) (5RT-632-633)

CONCLUSION: THE COURTS CLEARLY VIOLATED THE DEFENDANTS 6TH AMENDMENT RIGHT BY ALLOWING ONLY A LIMITED CROSS EXAMINATION OF THE DISTRICT ATTORNEYS EXPERT WITNESS, FRESNO POLICE SPECIALIST AND INVESTIGATOR DETECTIVE WELLS, WHEN THE LINE OF QUESTIONING WOULD HAVE LIKELY AFFECTED JURY'S ACCEPTANCE OF THE DEFENSES THEORY. U.S. V. PRITCHETT 699 F 2d 317, 321 (6TH CIR. 1983)

HERE ARE SOME OTHER POINTS OF AUTHORITY TO SUPPORT THE CONFRONTATION CLAUSE;

CROSS EXAMINATION MAY BE USED FOR THE PURPOSE OF RAISING AN AFFIRMATIVE DEFENSE. JENNINGS V. SUPERIOR COURT (1967) 66 C 2d 867, 59 CR 440) NEGATING AN ELEMENT OF THE OFFENSE. JENNINGS V. SUPERIOR COURT, SUPRA

DEAR MRS. KUTLER,

I WAS ADDRESSING SOME NEW ARGUMENTS FOR A SUPPLEMENTAL BRIEF WHEN I RECEIVED YOUR REPLY BRIEF.

I HAVE TO SAY THAT YOUR REPLY BRIEF SOUNDS AS IF YOUR ARGUING THE CASE FOR THE ATTORNEY GENERALS OFFICE. WHO IS IT THAT YOUR DEFENDING, THE ATTORNEY GENERAL OR THE APPELLANT? WHY WOULD YOU USE PEOPLE V. SHAVER WHEN ITS ALMOST 70 YEARS OLD? YOUR TELLING ME THAT WITH AN ENTIRE LAW FIRM AT YOUR DISPOSAL, YOU COULDN'T RESEARCH ANYTHING BETTER THAN A 68 YEAR OLD CASE? NOT TO MENTION THAT YOU PUT MORE EMPHASIS ON PEOPLE V. SHAVER AS OPPOSED TO THE PEOPLE V. PENSINGER AND THE FACT THAT THE SURPREME COURT RECOGNIZED THAT A "BRUTAL KILLING IS AS CONSISTANT WITH A KILLING IN THE HEAT OF PASSION AS WITH A PREMEDITATED KILLING." TACTICALLY, ONE CASE IS 68 YEARS OLD AND NEITHER CASE HAS A FAVORABLE OUTCOME FOR THE APPELLANT. WHAT ARE YOUR MOTIVES HERE?

I WOULD LIKE YOU TO REPLACE OR EXTRACT OR RETRACT PEOPLE V. SHAVER FOR A MORE FAVORABLE CASE BEFORE A RULING COMES DOWN. NEXT, I WOULD LIKE YOU TO PREPARE A SUPPLEMENTAL BRIEF REGARDING THE INEFFECTIVE ASSISTANCE OF COUNSEL AND THE CONFRONTATION CLAUSE USING THE OUTLINE TO WHICH I HAVE PROVIDED.

SINCERELY,
BRIAN MARTIN
Brian Martin

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Eileen S. Kotler
Balin + Kotler, LLP
1750 Francisco Blvd
Pacifica, CA 94044

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Eileen J Kotler ☐ Agent ☒ Addressee

B. Received by (Printed Name): EILEEN KOTLER
C. Date of Delivery: 5/3/04

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

PACIFICA CA
MAY 03 2004
USPS

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7004 0550 0000 7789 2206

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

7004 0550 0000 7789 2206

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com

PACIFICA CA 94044

| | |
|---|---|
| Postage | $ $1.52 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.57 |

0405
01
Postmark Here
04/29/2004

Sent To: Eileen S. Kotler
Street, Apt. No.; or PO Box No.: 1750 Francisco Blvd.
City, State, ZIP+4: Pacifica, CA 94044

15 of 64

BRIAN DOUGLAS MARTIN T94632
P.O. BOX 3461 3A02-224
CORCORAN, CA 93212-3461

EILEEN S. KOTLER
BALIN + KOTLER
1750 Francisco Blvd.
Pacifica, Ca. 94044

APRIL 29, 2004

{ Cal. Rules of Court; Rule(s) 13, 14, 183(a), (b), 184(c): }

APPELLANT WISHES TO JOIN IN BRIEF(S) THE ADOPTION BY REFERENCE RELEVANT COMPANION CASES; INCLUDING A STATEMENT OF THE CASE, CONCISELY AND AS FULLY AS NECESSARY FOR PROPER CONSIDERATION OF THE CASE.

DEAR MRS. KOTLER,

I AM WRITING IN RESPONSE TO YOUR APRIL 21, 2004 LETTER AND I UNDERSTAND THAT YOU WORK ALONE & ARE NOT AFFORDED THE LUXURY TO HIRE SECRETARIAL HELP. HOPEFULLY THIS ASSISTS YOU BEING THAT I HAVE DILIGENTLY RESEARCHED FOR IT IS MANDATORY THAT THESE IMPORTANT ISSUE'S AND CITATIONS THAT I HAVE BEEN RAISING BE TIMELY ADOPTED FOR PRESENTATION TO THE COURT SO I HAVE THE OPPORTUNITY TO OBTAIN A FAIR AND UNPREJUDICED OUTCOME. IT IS INCONTESTABLE THAT EVERY ISSUE IS EXAMINED THOROUGHLY.

THIS IS NOT AND WAS NOT THE EASIEST SUBJECT FOR ME TO EXPRESS AND RELAY TO YOU, HOWEVER, AS MY APPELLANT ATTORNEY I FEEL THAT YOU COULD ANALYZE MY MENTAL ACTUALITY WHERE FROM YOU CAN DEDUCE YOUR OWN CONCLUSION ABOUT THE LIKLIHOOD OF ME, AS AN INDIVIDUAL, COMMITTING A CRIME OF 2nd DEGREE MURDER, WHICH I DON'T FEEL WAS PROVEN BEYOND A REASONABLE DOUBT, OR THE HIGH PROBABILITY THAT I, A MARRIED AND VERY MUCH IN LOVE FAMILY MAN, COMMITTED A CRIME DURING THE "HEAT OF PASSION". NOT A DAY GOES BY THAT THIS INCIDENT DOESN'T HAUNT MY SLEEP. NOT ONLY DO I HAVE TO LIVE WITH THE FACT THAT I TOOK A HUMAN BEINGS LIFE, BUT WHAT ALSO WEIGHS ON MY HEART IS THAT THE PERSON WAS SOMEONE THAT I LOVED DEEPLY AND HELD DEAR TO MY SOUL. I ALSO HAVE TO CONTEND WITH EVERYDAY LIFE NOT KNOWING IF MY DAUGHTER WILL EVER SPEAK TO ME AGAIN.

EILEEN, I AM NOT ASKING FOR A "HAND OUT", I AM ASKING FOR MORE OF A "HELPING HAND". AFTER READING THIS I HOPE THAT YOU WILL FIND IT IN YOUR HEART TO HELP ME RECEIVE A SENTENCE THAT I SO UNDOUBTINGLY DESERVE. I'M NOT ARGUING THAT I DID NOT COMMIT A CRIME AND I SHOULD PAY MY DEBT TO SOCIETY, BUT IT'S THE LENGTH OF THAT DEBT IN QUESTION HERE.

LET ME FIRST EXPLAIN MY RELATIONSHIP WITH JENNIFER. WE WERE HIGH SCHOOL SWEETHEARTS

AND WERE TOGETHER FOR THE SUM OF EIGHT YEARS AND MARRIED FOR ONE YEAR. WE HAD BEEN TOGETHER FOR ABOUT FOUR YEARS WHEN JENNIFER BECAME PREGNANT WITH OUR DAUGHTER ELISHA. ON FEBRUARY 17, 1997 MY THEN GIRLFRIEND, JENNIFER, GAVE BIRTH TO A BEAUTIFUL, BOUNCING BABY GIRL. THIS DAY IS A DAY THAT CHANGES A YOUNGMANS LIFE FOREVER. I LOOKED TO WHAT WAS INSTILLED IN ME MORALLY AND EXAMINED MY PARENTS RELATIONSHIP, WHOM ARE ALSO HIGH SCHOOL SWEETHEARTS, TO USE AS A GUIDE TO WHAT OUR RELATIONSHIP SHOULD BE. I DECIDED THAT WE NEEDED TO BE TOGETHER IN ORDER TO BUILD THAT FIRM BOND AND FOUNDATION TO SET OUR FAMILY VALUES. WE ALL, JENNIFER, ELISHA, AND I, LIVED TOGETHER AT MY PARENTS HOME. I RAISED MY DAUGHTER WHILE JENNIFER WENT BACK TO WORK. I WAS FORTUNATE ENOUGH TO BE A STAY AT HOME DAD FOR AN ENTIRE YEAR AND A HALF. IN AUGUST OF 1998 I OPENED MY OWN BUSINESS AND IN AUGUST OF 1999 WE WERE ABLE TO MOVE OUT OF MY PARENTS HOME AND BEGAN TO MAKE A HOME FOR OURSELVES. SOON AFTER WE WERE MARRIED.

IN JULY OF 2001 I BEGAN TO SUSPECT THAT SOMETHING WAS A MISS IN OUR MARRIAGE. I COULD FEEL MY FAMILY SLIPPING AWAY. I WAS DETERMINED TO KEEP US TOGETHER. AS YOU KNOW, JULY WAS WHEN I FIRST SEEN MY WIFE FLIRTING AT A PARTY. DUE TO MY LOVE AND DEVOTION, NOT ONLY TO MY WIFE, BUT TO MY

DAUGHTER, AND MY BELIEF THAT MARRIAGE IS SACRED, I DECIDED TO TRY TO WORK ON WHATEVER THE ISSUE'S WERE. EVEN THOUGH WE DECIDED TO WORK ON OUR RELATIONSHIP MY WIFE'S BEHAVIOR THROUGHOUT SEPTEMBER CONTINUED TO SHOW THAT HER DESIRES WERE ELSEWHERE, BUT WHEN CONFRONTED WITH THIS JENNIFER CONTINUED TO DENY OR IGNORE THE ALLEGATIONS FURTHER FRUSTRATING AND COMPOUNDING MY ATTEMPTS TO WORK THROUGH OUR "FOR BETTER OR FOR WORSE" PORTION OF OUR MARRIAGE VOWS. I DID NOT PRESS THE ISSUE AT THIS TIME BECAUSE I THINK THAT SUBCONSCIOUSLY I DIDN'T WANT TO BELIEVE THAT AN AFFAIR WAS TAKING PLACE. AT THAT POINT I FELT LIKE I COULD NOT TRUST ANYTHING THAT WAS SAID TO ME BY MY WIFE. I HAD FEELINGS OF HURT, BETRAYEL AND WAS SCORN BY MY WIFES SILENT PROVOKING AND NONCHALANT IGNORING OF THIS VERY SENSITIVE SUBJECT

OCTOBER COMES ALONG AND I HAVE A JOB INTERVIEW. IT GOES WELL AND I AM EXTENDED AN OFFER TO WORK FOR THE COMPANY. EXCITED BY MY NEW EMPLOYMENT, I DECIDED IT'S TIME TO CELEBRATE. I HEADED OVER TO MIKE'S PIZZERIA WHERE ANDREW BONILLA WAS WAITING TO CELEBRATE WITH ME. I HAD CONFIDED IN MR. BONILLA BEFORE AND HE KNEW THAT MY MARRIAGE WAS UNDER STRAIN. DURING THE COURSE OF THE NIGHT I WAS ASKED HOW THINGS

WERE GOING WITH MY MARRIAGE. AT WHICH POINT I LET ANDREW KNOW THAT IF COUNSELING DID NOT PREVAIL THEN A SEPARATION WAS MOST LIKELY. SOME TIME PASSED AND MORE ALCOHOL WAS CONSUMED. I ENDED UP BACK AT MY HOME IN A HEATED ARGUMENT WITH MY WIFE ABOUT HER FIDELITY AND DUE TO INTOXICATION I CANNOT REMEMBER EVERYTHING THAT WAS DONE OR SAID IN ITS ENTIRETY. WHAT I CAN RECALL IS JENNIFER CONFIRMING MY NIGHTMARE THAT AN ACTUAL AFFAIR WAS TAKING PLACE BETWEEN MY WIFE AND A CO-WORKERS SON (CATHY'S SON). AT THAT POINT I REMEMBER PICTURING MY WIFE AND CATHY'S SON BEING TOGETHER ON ALL THE OCCASSIONS THAT JENNIFER HAD SAID "I'M TAKING CATHY HOME" OR "CATHY'S BUYING ME LUNCH" OR "CATHY AND I ARE GOING SHOPPING". INSTANTLY, AN OVERWHELMING FEELING CAME OVER ME, AS IF MY ENTIRE WORLD CAME CRASHING IN ON ME ALL AT ONCE; I THOUGHT OF NOTHING OTHER THAN THE EXTREME PAIN AND HURT FROM HER BETRAYAL NOT JUST TO ME, BUT TO THE SANCTITY OF OUR MARRIAGE AND OUR DAUGHTER. I WAS BLINDED BY THIS AND RESORTED TO PHYSICALLY HURTING MY WIFE. DURING WHICH TIME I SOMEHOW REALIZED WHAT I WAS DOING AND LET HER GO, BUT CONTINUED TO DESTROY MY HOME STEREO. STILL ASTONISHED BY THESE EARTH SHATTERING REVELATIONS I TRIED TO COOL DOWN BY GOING TO THE BATHROOM TO WASH UP, BUT TO NO

AVAIL. I FELT DISGUSTED WITH HER BEHAVIOR REGARDING HER ADULTERY. MY WIFE CAME INTO THE BATHROOM TO CONTINUE THIS HEATED CONTROVERSY AT WHICH POINT I STATED "YOU MAKE ME SICK" OR "YOU DISGUST ME" AND I PUSHED HER AWAY FROM ME, BUT SHE FELL TO THE FLOOR. THIS COUPLED WITH THE PREVIOUSLY INFLICTED INJURIES CONTRIBUTED TO MY WIFE'S DEATH.

I.

PROSECUTIONS PREJUDICIAL MISCONDUCT OF INHERENTLY MISLEADING STATEMENTS, AND OBSTRUCTION OF THE COMPUSORY PROCESS CUMULATIVELY CONTRIBUTED TO THE VERDICT.

I AM EXPANDING ON SOME ISSUE'S WHICH WERE PREVIOUSLY RAISED. I HAVE NOTICED ON PAGE 33 OF THE OPENING BRIEF YOU MENTIONED THE COMPULSORY PROCESS AND CONFRONTATION CLAUSES OF THE 6TH AMEND. YOU POINT TO WHAT I BELIEVE TO BE THE STANDARD CITATION FOR THE COMPULSORY PROCESS. IN FURTHER RESEARCHING THE COMPULSORY PROCESS THERE WERE A COUPLE OF COMPANION CASES THAT I FOUND WHICH STATE CIRCUMSTANCES THAT ARE EXTREMELY SIMILAR TO MY CASE AND IN QUOTING U.S. V. VAN DYKE 14 F 3d 415, 422 (8TH CIR)(1994) "ERRONEOUS EXCLUSION OF EXPERT WITNESS'S TESTIMONY REGARDING VIOLATIONS OF REGULATION WITH WHICH DEFENDANT CHARGED NOT HARMLESS BECAUSE EXCLUSION MAY HAVE

CONTRIBUTED TO VERDICT WERE PROSECUTION ALLOWED TO ELABORATE ON REGULATION". IN THE PRESENT CASE IT WAS THE PROSECUTIONS WITNESS'S TESTIMONY EX-CLUDED AND IF THE DEFENDANT WERE ALLOWED TO ELABORATE THE WITNESS'S TESTIMONY WOULD HAVE LIKELY AFFECTED THE JURY'S ACCEPTANCE OF DEFENSES THEORY AND PRO-DUCED A MORE FAVORABLE OUTCOME. THIS PARTICULAR TESTIMONY OF DECTECTIVE WELLS WAS CRUCIAL TO THE DEFENSE IN SHOWING THAT THIS WAS A "HEAT OF PASSION" CRIME. BY DENYING THE DEFENSE THE OPPORTUNITY TO ELICIT TESTIMONY IN DETAIL ABOUT THIS SPECIFIC AREA OF EXPERTISE KNOWN TO DETECTIVE WELLS DENIED APPELLANT HIS 6TH AMEND. RIGHT TO EXERCISE HIS COMPULSORY RIGHT TO SHOW THAT THE WITNESS'S TESTIMONY WOULD BE MATERIAL AND MAY HAVE CONTRIBUTED TO THE VERDICT. FURTHERMORE, IN ENACTING PROCEDURAL RULES, A STATE MAY NOT ARBITRARILY LIMIT A DEFENDANTS ABILITY TO SECURE THE TESTIMONY OF A FAVORABLE WITNESS. IN <u>WASHINGTON V. TEXAS</u> 388 U.S. 14 (1967) Id AT 23 THE SUPREME COURT HELD THAT THE STATE VIOLATED COMPULSORY PROCESS CLAUSE BECAUSE IT ARBITRARILY DENIED THE DEFENDANT THE RIGHT TO PRESENT A MATERIALLY FAVORABLE WITNESS WHO WAS BOTH MENTALLY AND PHYSICALLY CAPABLE OF TESTIFY-ING ABOUT EVENTS HE HAD PERSONALLY OBSERVED. e.g. <u>U.S. V. BLUM</u> 62 F 3d 63, 69 (2d CIR 1995) (NOT HARMLESS BECAUSE EXCLUSION MAY HAVE CONTRIBUTED TO VERDICT

WHERE WITNESS'S TESTIMONY CRUCIAL TO GOVERNMENTS CASE. THESE BEFOREMENTIONED CONSTITUTIONAL VIOLATIONS DEMONSTRATED PREJUDICE TO THE DEFENDANT AND THE "CHAPMAN TEST" SHOULD BE APPLIED. IN CHAPMAN V. CALIFORNIA (1967) 386 U.S. 18, 17 L.Ed 2d 705 87 S. Ct. 824 "SUCH ERRORS WILL BE FOUND PREJUDICIAL UNLESS PROSECUTION CAN SHOW BEYOND A REASONABLE DOUBT THAT THE ERROR DID NOT CONTRIBUTE TO THE VERDICT" THE DEFENDANT WAS OBSTRUCTED BY THE TRIAL COURT AS WELL AS THE DISTRICT ATTORNEY FROM OBTAINING PERTINENT TESTIMONY WHICH WOULD HAVE CONTRIBUTED TO THE DEFENSE THAT DEFENDANT ACTED IN THE "HEAT OF PASSION" RATHER THAN WITH IMPLIED MALICE. THE JURY MAY HAVE BEEN ABLE TO ESTABLISH "REASONABLE DOUBT" AND A MORE FAVORABLE OUTCOME FOR THE DEFENDANT. UNDER THESE CIRCUMSTANCES THE PROSECUTION CANNOT SHOW THAT THE ERROR WAS "HARMLESS BEYOND A REASONABLE DOUBT" AND A REVERSAL IS REQUIRED. THIS IS PART OF THE PROSECUTIONAL MISCONDUCT WHICH I MENTIONED TO YOU WELL BEFORE YOUR OPENING BRIEF WAS FILED. I AM WITHOUT THE TRIAL TRANSCRIPTS AND CANNOT ADEQUATELY RESEARCH THIS AREA, HOWEVER WAS PRESENT AT TRIAL AND CAN RECALL SEVERAL MISLEADING STATEMENTS THAT MAY HAVE IN FACT SO INFECTED THE TRIAL WITH UNFAIRNESS AS TO MAKE THE RESULTING CONVICTION A DENIAL OF DUE PROCESS. THE FIRST REMARK THAT I AM ATTACKING CAME WHILE I WAS ON THE STAND, BUT WHAT I HAVE BEEN

ASKING YOU TO DO IS ESTABLISH A PATTERN OR OTHER REMARKS THAT MAY CONTRIBUTE TO A PROSECUTIONAL MISCONDUCT CLAIM. THE FIRST REMARK MADE BY DENNIS PETERSON WAS "I DON'T BELIEVE THERE WAS EVEN AN AFFAIR" OR SOMETHING VERY SIMILAR IN NATURE TO THAT. THE TEST OF PREJUDICE IS WHETHER IT IS "REASONABLY PROBABLE THAT A RESULT MORE FAVORABLE TO THE DEFENDANT WOULD HAVE OCCURRED HAD THE DISTRICT ATTORNEY REFRAINED FROM THE COMMENT ATTACKED BY THE DEFENDANT." PEOPLE V. BEIVELMAN (1968) 70 CAL. 2d 60, 75, 73 CAL Rptr. 521, 529, 447 P. 2d 913, 921. WITH THE PROSECUTIONS COMMENT HE DECLARED HIMSELF AN "UNSWORN WITNESS" WHICH VIOLATES MY 14TH AMEND. RIGHT TO DUE PROCESS AS WELL AS MY 6TH AMEND. RIGHT TO CONFRONT ANY HOSTILE WITNESS AS STATED IN THE CONFRONTATION CLAUSE. THE PROSECUTION MAY NOT EXPRESS PERSONAL OPINIONS ABOUT THE DEFENDANTS CREDIBILITY WHICH IS WHAT THE "I DON'T BELIEVE THAT THERE WAS EVEN AN AFFAIR" COMMENT DID BECAUSE THE COMMENT WAS MADE WHILE I WAS ON THE STAND DIRECTLY AFTER A LINE OF QUESTIONING ABOUT THE AFFAIR. INJURY TO THE APPELLANT IS NONETHELESS AN INJURY BECAUSE IT WAS COMMITTED INADVERTENTLY RATHER THAN INTENTIONALLY. U.S. V. NETTL (3RD CIR. (1941) 121 F2d 927, 930). PROSECUTIONAL MISCONDUCT NEED NOT BE INTENTIONABLE BEFORE IT CONSTITUTES REVERSABLE ERROR. IN U.S. V. YOUNG 470 U.S. 1, 11-12 (1985)

STATEMENTS MUST BE VIEWED IN CONTEXT OF ENTIRE PROCEEDING TO DETERMINE WHETHER CONDUCT AFFECTED FAIRNESS OF TRIAL. IN CHAPMAN V. CALIFORNIA (1967) 386 U.S. 18, 17 L. Ed 2d 705 87 S.Ct. 824 APPLIES TO CONSTITUTIONAL ERRORS "SUCH ERRORS WILL BE FOUND PREJUDICIAL UNLESS PROSECUTION CAN SHOW BEYOND A REASONABLE DOUBT THAT THE ERROR DID NOT CONTRIBUTE TO THE VERDICT." WHETHER INADVERTENTLY OR INTENTIONALLY STATED THE OPINION EXPRESSED BY THE PROSECUTION WAS SO SUBSTANTIAL AND INJURIOUS THAT HE IN FACT DISMISSED THE CREDIBILITY OF THE DEFENDANT IN CONJUNCTION WITH THE DEFENDANTS TESTIMONY ALONG WITH THE "HEAT OF PASSION" DEFENSE ALL AT ONCE. NOT ONLY DID THE PROSECUTION ACT AS AN UNSWORN WITNESS, BUT HE ALSO TRAMPLED ON THE DEFENDANTS 6TH AMEND. RIGHTS WHEN OBJECTING TO A LINE OF QUESTIONING KNOWING THAT IT WAS PERTINENT TO THE DEFENSE DENYING DEFENDANTS RIGHTS TO THE COMPULSORY PROCESS, CONFRONTATION CLAUSE AS WELL AS DUE PROCESS RIGHTS OF THE 14TH AMEND. THEREFORE, PROVING ACTUAL PREJUDICE THAT WOULD INFLUENCE THE JURY VERDICT AND CONSTITUTES REVERSIBLE ERROR. AS I PREVIOUSLY CONVEYED, THE OTHER MISLEADING STATEMENTS WERE MADE DURING THE CLOSING ARGUMENT WHICH IN FACT LEAD JURORS TO BELIEVE THAT DEFENDANTS CRIME DID NOT WARRANT A HEAT OF PASSION VERDICT.

THE STATEMENTS REFER TO; "IF A MAN CAME HOME AND FOUND OUT THAT THE NEIGHBOR MOLESTED HIS CHILD AND THE MAN TOOK A BAT AND KILLED THE NEIGHBOR THEN THAT WOULD BE HEAT OF PASSION". NOT ONLY WAS THE PROSECUTION MISLEADING THE JURY, BUT HE WAS IN EFFECT DICTATING TO THE JURY WHAT CONSTITUTES HEAT OF PASSION. "STATEMENT OF FACTS NOT IN EVIDENCE BY THE PROSECUTING ATTORNEY IN HIS ARGUMENT TO THE JURY CONSTITUTES MIS-CONDUCT". PEOPLE V. KIRKES (1952) 39 CAL. 2d 719, 724, 249 P. 2d 1. FURTHERMORE, THESE STATEMENTS ALONG WITH THE PROSECUTIONS OBJECTIONS TO THE DEFENSES LINE OF QUESTIONING DURING CROSS-EXAMINATION OF DETECTIVE WELLS SHOWS THE CUMULATIVE EFFORTS TAKEN ON THE PART OF THE PROSECUTOR MAKES PROSECUTIONAL MISCONDUCT A LEGITIMATE CLAIM THAT LEAD TO ACTUAL PREJUDICE AND AN UNFAIR TRIAL PROCEEDING. PLEASE RESEARCH PEOPLE V. TAYLOR (1961) 197 CAL. APP 2d 372, 381-384, 17 CAL. Rptr. 233. HAVE YOU FOUND ANY OF THESE STATE-MENTS YET?

II.

REQUEST THAT ALL DISCOVERY DISCLOSURE AND TRIAL COUNSELS WORK PRODUCT BE DISCLOSED PENAL CODE(S) 1054-1054.7, 1240.1 et. seq.

COUNSEL MUST RELEASE TO THE CLIENT OR THE

CLIENTS NEW ATTORNEY, ALL CLIENT PAPERS OF INVESTIGATOR REPORTS, RELEVENT WITNESS STATEMENTS, PHONE RECORDS etc.... REGARDLESS OF WHETHER THE ATTORNEY HAS BEEN PAID FOR HIS OR HER SERVICES CAL RULES OF PROF COND 3-700 (D). AND OF THE NATURE OF ANY CONSTITUTIONALLY MANDATED DISCOVERY THAT THE COURT OR PROSECUTION THROUGH WORK PRODUCT, WHICH WAS REFUSEN TO BE CONTINUALLY PURSUED. PC 1054.2 AND 1054 (d). FOR I BELIEVE THERE IS RELEVENT DOCUMENTARY EVIDENCE, HEREIN, THAT COULD CONTRIBUTE TO THE "HEAT OF PASSION" DEFENSE, WHICH WOULD MAKE THE "PROSECUTION'S BURDEN SHOWING THAT SUCH STATED ERRORS WERE NOT PREJUDICED AND DID NOT CONTRIBUTE TO VERDICT"; EVEN MORE BURDENSOME TO PROVE! TRIAL COUNSEL SHOULD FULLY AND CANDIDLY COOPERATE WITH APPELLANT COUNSEL, EVEN IF THIS MEANS DISCLOSING TRIAL COUNSELS INEFFECTIVENESS. CALIFORNIA STATE BAR STANDING COMMITTEE ON PROFESSIONAL RESPONSIBILITY AND CONDUCT, FORMAL OPINION No. 1992-127.

I AM NOW SENDING ALL LETTERS VIA CERTIFIED MAIL RECEIPT BECAUSE OF THE ISSUE'S WHICH I HAVE BEEN RAISING FOR SOMETIME NOW FAILED TO MAKE IT INTO THE OPENING BRIEF. YOU HAVE ALSO FAILED TO RESPOND TO MY APRIL 6, 2004 LETTER WHICH YOU SIGNED FOR ON APRIL 19, 2004. HOWEVER, YOU DID MANAGE TO RESPOND TO MY APRIL 14, 2004

LETTER? THEREFORE, BY NOT RESPONDING TO PERTINENT ISSUE'S AND THE CONSTITUTIONAL CITATIONS ABOUT MY CASE YOU HAVE GIVEN ME PLENTY OF REASONS TO FEEL THAT YOU ARE ABANDONING MY CASE AND I. IF YOU CANNOT ADOPT THESE COMPARISON ISSUE'S AND CASES INTO BRIEF,[1] IN A TIMELY MANNER BEFORE A PREJUDICIAL RULING, THEN I SUGGEST THAT YOU REQUEST A RE-CONSIDERATION FOR REVIEW AND/OR TRY TO OBTAIN PERMISSION BY THE CHIEF JUSTICE OR PRESIDING JUSTICE TO FILE ADDITIONAL OR SUPPLEMENTAL BRIEFS PER CAL. RULES OF COURT 13, 14 et. seq. FOR IN-CLUSION OF ALL THESE RELEVENT ISSUE'S DISCUSS-ED, DUE TO THE FACT THAT YOU ARE STILL REPRESENT-ING ME RIGHT OR ELSE YOU HAVE IN FACT CHOSEN TO ABANDON MY CASE ON APPEAL?? BOTH OF WHICH ANYONE REASONABLE PERSON WOULD COME TO THE CON-CLUSION THAT THIS IS EXACTLY WHAT HAPPENED. <u>READ V. STATE BAR</u> (1990) 53 C3d 394, 279 CR 818, CAL RULES OF PROF COND 3-700(A) IT IS UN-ETHICAL TO ABANDON A CLIENT. <u>BORR V. STATE BAR</u> (1991) 52 Cd 1047, 277 CR 864. IF YOU HAVE IN FACT CHOSEN TO ABANDON MY CASE AS IT SEEMS YOU HAVE, MY FAMILY AND I WILL HAVE NO AL-TERNATIVE BUT TO FILE OUR COMPLAINT TO THE CALIFORNIA STATE BAR AND THE A.B.A. WITH THE INCLUSION OF ALL PERTINENT MAIL I'VE SENT TO YOU WITH U.S. CERTIFIED PROOF OF SERVICE RE-

[1] CAL. RULES OF COURT 13, EVERY APPELLANT SHALL FILE AN OPENING BRIEF, EXCEPT THAT AN APPELLANT MAY JOIN IN A BRIEF OR MAY ADOPT BY ANY BRIEF IN THE SAME OR COMPANION CASES.

CEIPTS; REGARDING YOUR (1) DEFICENT PERFORMANCE WHICH FELL WELL BELOW THAT OF PROFESSIONAL NORMS AND (2) BECAUSE FAILURE TO RAISE ISSUE'S RESULTED IN THE PREJUDICIAL OUTCOME OF THE APPELLANT PROCEEDING, i.e., U.S. v. BIRTLE (1986) 792 F2d 846, 847.

I DIDN'T MEAN TO COME OFF TO FORWARD OR COLD HEARTED BECAUSE THATS NOT THE TYPE OF PERSON I AM, HOWEVER BY THE WAY YOU HAVE SEEMED TO OVERLOOK ALL THESE CONTENTIONS; YOU HAVE GIVEN ME AND MY FAMILY NO OTHER CHOICE, BUT TO EXPRESS OURSELVES THIS WAY, DUE TO THE FACT ALL OUR PRIOR RESPECTFUL GOOD FAITH EFFORT SEEM TO HAVE BEEN DONE TO NO AVAIL.

SINCERELY

*Brian Martin*

BRIAN MARTIN

7004 1160 0001 3978 5048

**U.S. Postal Service™**

**CERTIFIED MAIL™ RECEIPT**

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

PACIFICA CA 94044

| | |
|---|---|
| Postage | $ $1.29 |
| Certified Fee | $2.30 |
| Return Reciept Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $3.59 |

0405

Postmark Here

FRESNO, CA HUGHES STA. USPO DEC 14 2004

12/14/2004

Sent To Eileen S. Kotler

Street, Apt. No.; or PO Box No. 1750 Francisco Blvd.

City, State, ZIP+4 Pacifica, Ca. 94044

PS Form 3800, June 2002 See Reverse for Instructions

BRIAN DOUGLAS MARTIN
C.S.P. 3A03 216 T-94632
P.O. BOX 3461
CORCORAN, CA 93212-3461

EILEEN S. KOTLER
BALIN & KOTLER, LLP
1750 FRANCISCO BLVD.
PACIFICA, CA 94044
DECEMBER 8, 2004

{INCLUDED WITH THIS LETTER ARE PREVIOUS LETTERS DATED 4-6-04 AS WELL AS 4-29-04}

DEAR MRS. KOTLER,

THIS IS IN REGARDS TO YOUR JULY 14, 2004 LETTER WHICH INCLUDED A SUPPLEMENTAL OPENING BRIEF FILED THAT SAME DAY.

MY RESPONSE HAS BEEN DELAYED DUE TO CIRCUMSTANCES BEYOND MY CONTROL IN WHICH I AM CURRENTLY HOUSED IN ADMINISTRATIVE SEGREGATION AND HAVE LIMITED ACCESS TO MY PROPERTY. AS YOU ARE AWARE, I AM INCARCERATED.

ON APRIL 6, 2004 I PROVIDED YOU WITH A LETTER (SEE ATTACHED)[1] IN WHICH I ASKED YOU TO FILE A SUPPLEMENTAL BRIEF(S) ON MY BEHALF. THE ARGUEMENTS I ASKED YOU TO INCLUDED CONSISTED OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND THE CONFRONTATION CLAUSE WHICH I OUTLINED FOR YOU.

AT THAT POINT YOU RESPONDED TO MY APRIL 6, 2004 LETTER STATING THAT THE COURTS WOULD NOT ACCEPT A SUPPLEMENTAL BRIEF.

ON APRIL 29, 2004, THROUGH RESEARCH OF MY OWN, I PRESENTED YOU WITH THE CAL. RULE(S) OF

[1] DENOTES EXHIBIT "A"

COURT 13, 14, 183 (a), (b), 184 (c) WHICH STATES THAT APPELLANT MAY JOIN IN SUPPLEMENTAL BRIEF(S) ALONG WITH RELEVANT COMPANION CASES. I ALSO ASKED YOU TO INCLUDE PROSECUTIONAL MISCONDUCT (SEE ATTACHED)[3].

AT THAT POINT YOU RESPONDED TO MY APRIL 29, 2004 LETTER STATING THAT YOU DECLINE TO JOIN IN ANY ADDITIONAL BRIEF(S) ON MY BEHALF.

ON JULY 14, 2004, TWO AND A HALF MONTHS LATER, I RECEIVED A SUPPLEMENTAL BRIEF THAT YOU FILED IN WHAT SEEMS TO BE AN ATTEMPT TO COVER THE FACT THAT YOU DELIBERATELY MISLED YOUR CLIENT BY STATING THE COURTS WOULD NOT ALLOW A SUPPLEMENTAL BRIEF. FURTHERMORE, ALL THE AFOREMENTIONED RELEVANT FACTS ALONG WITH COMPANION CASES PRESENTED TO YOU IN PREVIOUS LETTERS FAILED TO BE INCLUDED IN THE SUPPLEMENTAL BRIEF.

IN CONCLUSION, FOR REASONS UNKNOWN TO ME, YOU FAILED TO RESEARCH, INVESTIGATE, AND INCLUDE ANY OF THE RELEVANT FACTS PERTINANT TO THE ISSUES AT HAND. I CONVIENTLY OUTLINED AND TEMPLATED THESE FACTS FOR YOU TO FOLLOW IN AN ATTEMPT TO EASE YOUR BURDENS THAT YOU CLEARLY EXPRESSED TO ME PREVIOUSLY. YOUR FAILURE TO INCLUDE THE AFOREMENTIONED ISSUES LEADS ME TO BELIEVE THAT THIS WAS EITHER A LACK OF SKILL, A LACK OF JUDGEMENT, OR A LACK OF RESOURCES ON YOUR PART IN WHICH YOUR PEFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS. DUE TO OUR MANY CONFRONTATIONS AND UNWILLINGNESS ON YOUR PART IT IS CLEAR THAT YOU HAVE ABANDONED MY CASE AND I. DUE TO YOUR DEFICIENT PERFORMANCE MY PROCEEDINGS ARE PREJUDICED MAKING THE RESULTS UNRELIABLE AND FUNDAMENTALLY UNFAIR. FUTHERMORE, YOU HAVE ETHICALLY

[3] DENOTES EXHIBIT "B"

LET DOWN THE AMERICAN JUSTICE SYSTEM AS WELL AS YOUR CLIENT THAT YOU HAVE AN OBLIGATION TO.

PLEASE, BEFORE YOU ONCE AGAIN DECLINE TO HELP MY CASE AND I, RESEARCH ANY AND ALL POSSIBILITIES TO JOIN IN A SUPPLEMENTAL BRIEF REGARDING ALL THE IMPORTANT RELEVANT FACTS AND COMPANION CASES THAT I HAVE PROVIDED IN THIS LETTER AS WELL AS PREVIOUS LETTERS SENT TO YOU VIA CERTIFIED MAIL. RECTIFY THE SITUATION WHICH YOU HAVE CREATED IMMEDIATELY.

MRS. KOTLER OF BALIN & KOTLER, PLEASE PROPERLY FULFILL YOUR OBLIGATIONS TO ME AS A LEGAL LAW PROFESSIONAL. THANK YOU FOR YOUR TIME.

SINCERELY

Brian Martin

BRIAN MARTIN

# MOTION FOR DISCOVERY

# OF PHONE RECORDS

**PAUL G. CARPIO, BAR No. 182190**
**JUAN M. FALCON & ASSOCIATES, INC.**
**A Professional Corporation**
**Attorneys at Law**
**2014 Tulare Street, Suite 212**
**Fresno, CA 93721**
**Telephone: (559) 499-2626**
**Facsimile: (559) 499-2622**

**Attorney for Defendant, BRIAN MARTIN**

FILED
OCT 15 2002
FRESNO SUPERIOR COURT
By [signature] DEPUTY
DEPT. 95

**IN THE SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF FRESNO**

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

**Plaintiff,**

**vs.**

**BRIAN MARTIN,**

**Defendant.**

**Case No. 670487-8**

**STIPULATION AND ORDER**

**STIPULATION**

It is hereby stipulated by and between the parties, through their respective Counsel of Record, that the fourth floor exhibit clerk may release photocopies of subpoenaed documents in her possession regarding the above-entitled case to Defendants counsel Paul G. Carpio. The documents to be released to Defendants counsel Paul G. Carpio are cellular phone records from Verizon Wireless and Police Reports from Fresno Police Department. Defendant is then to provide photocopies of these documents to Senior Deputy District Attorney Dennis Peterson.

DATED: October 14, 2002

[signature]
PAUL G. CARPIO
Attorney for Defendant
BRIAN MARTIN

DATED: October 15, 2002

DENNIS PETERSON
Senior Deputy District Attorney

**ORDER**

Based on the foregoing stipulation, and good cause appearing,

**IT IS HEREBY ORDERED** that the fourth floor exhibit clerk is to provide Defendants counsel Paul G. Carpio photocopies of the subpoenaed cellular phone records from Verizon Wireless and police reports from Fresno Police Department in regards to the matter of People v. Brian Martin.

DATED: October 15, 2002

JUDGE OF THE SUPERIOR COURT

# RESPONDANTS BRIEF

It is apparent that the jury was required to determine both the subjective component, whether appellant's reason was so obscured by passion that he killed his wife, and the objective component, whether a reasonable person in the same circumstances would also have acted from passion and without deliberation and reflection. While the number of injuries suffered by Jennifer was one fact for the jury to consider in arriving at a decision on the subjective component of heat of passion manslaughter, it was not a topic on which expert testimony was necessary. The jury was aware of the number and seriousness of injuries inflicted on Jennifer and able to assess those facts in its consideration of whether the overall facts supported a finding appellant acted in the heat of passion.

Nothing precluded defense counsel from arguing that the number of injuries inflicted on Jennifer was one indication that appellant was acting in the heat of passion. Defense counsel argued that appellant killed Jennifer while in the heat of passion over the disclosure that she was having an affair, and that appellant was guilty only of voluntary manslaughter. (RT 1060.) Alternatively, defense counsel argued it was involuntary manslaughter because the death occurred unexpectedly as a result of a spousal battery, when there was no intent to kill. (RT 1066.) Defense counsel could have argued, even without testimony from an expert or lay witness, that the number of times Jennifer was struck was indicative of appellant's reason being obscured by heat of passion. This would have been simple argument based on the facts. Thus, it was not error for the trial court to have sustained the prosecutor's objection to the question posed on cross-examination to Detective Wells. Nor was there prejudice even had it been error, since nothing precluded defense counsel from making such an argument.

It follows that since there was no improper exclusion of expert (or lay) testimony in this case, appellant suffered no due process deprivation.

# LETTER TO TRIAL COUNSEL

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Juan Falcon
Attorney At Law
2014 Tulare
Fresno, Ca. 93721

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Vanessa [signature] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*)

C. Date of Delivery 4/22/04

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number
(*Transfer from service label*) 7003 3110 0002 5812 3707

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1540

7003 3110 0002 5812 3707

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ $0.37 |
| Certified Fee | $2.30 |
| Return Reciept Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.42 |

Postmark Here
0405
14
04/21/2004

Sent To Juan Falcon
Street, Apt. No.; or PO Box No. 2014 Tulare
City, State, ZIP+4 Fresno Ca 93721

PS Form 3800, June 2002 See Reverse for Instructions

BRIAN DOUGLAS MARTIN T-94632
C.S.P. 3A02-221UP
P.O. BOX 3461
CORCORAN, CA 93212-3461

JUAN FALCONE
FALCONE AND ASSOCIATES, LLP

FRESNO, CA
APRIL 21, 2004

DEAR MR. FALCONE,

I AM WRITING TO YOU TODAY BECAUSE THERE ARE SOME ISSUES BEING RAISED ON MY APPEAL THAT I HAVE UNFORTUNATELY BEEN FORCED TO DO SOME RESEARCH ON MY OWN BEHALF.

THAT BEING SAID, I RESPECTFULLY REQUEST A COPY OF YOUR ENTIRE WORK PRODUCT REGARDING MY MOST RECENT CASE. I WOULD ASK YOU TO INCLUDE ALL MATERIALS TO WHICH YOU MAY POSSESS. INCLUDING, BUT NOT LIMITED TO; THE PRIVATE INVESTIGATORS NOTES, LOGS, ET CETERA; THE VERIZON WIRELESS CELL PHONE RECORDS; AS WELL AS ALL MOTIONS AND COURT ORDERS THAT WERE FILED BY BOTH YOUR FIRM/INVESTIGATOR AS WELL AS THE DISTRICT ATTORNEY.

I DO NOT FORESEE THESE REQUESTS AS OVERBEARING OR OVERTLY BURDENSOME, HOWEVER; IF FOR ANY REASON YOU FEEL THAT YOU CANNOT FULFILL MY REQUESTS FEEL FREE TO CONTACT ME, AT THE ADDRESS STATED ABOVE, AND EXPRESS YOUR REASONS

# DEFENDANTS TESTIMONY

for three to four weeks?

A. That's correct.

Q. Was that a complete abstention from alcohol?

A. That was not drinking.

Q. At all? Zero?

A. Not drinking.

Q. Zero; is that right?

A. Yeah.

Q. No beer?

A. No beer.

Q. Okay. Well, when you were at the bar, didn't you tell Andrew Bonilla that he should come over to your house because you had some more beer in your refrigerator at home?

A. I told him come to my house so we could continue drinking.

Q. Is that because you had beer in your refrigerator?

A. No, sir.

Q. Well, did you suggest that he buy some more alcohol or beer and bring it with him or did you tell him you had beer at your house?

A. I didn't suggest either or. I just suggested him come to my house so we could continue drinking.

Q. Okay. Now did this -- your drinking that particular night, did that violate some sort of agreement you had with Jennifer?

A. Yeah, probably would have.

# PROSECUTORS MISSTATEMENTS

# OF LAW

# AND DEFENDANTS TESTIMONY

notes. Ask for a read back. But he invited -- he invited Andrew Bonilla to his house to have more drinks that he had in the refrigerator. They're in the refrigerator.

You've heard testimony from Mr. Alfonso Banales, friend and neighbor of the defendant, who stated that he heard a rather loud verbal argument around 11:15 to 11:30 on the evening of October 8th, 2001. He knows these people. He's talked with them. He's had barbecues at their house. He recognized the voices. He said he heard these loud voices and he assumed it was a domestic dispute and he said he tried to put it out of his mind. It wasn't his business. He tried to ignore it when he went out to calm his dog. He said he went out a second time to try and calm his dog. His dog was barking again. He heard the argument continuing again ten to fifteen minutes later. He, defendant, ended his testimony by describing the fact he's at Mike's Pizzeria during that period of time Mr. Banales is talking about. And that's why I say there's some serious credibility issues here.

Mr. Banales told some investigators, after having his recollection refreshed, he recalled that, in fact, he heard a door open. He heard a car door open. It was in the neighborhood. It was one of his neighbors. He heard a vehicle leave. He heard a vehicle bottom out and he wasn't sure if that was when the vehicle was leaving or when he described the car coming back in 20 to 30 minutes. He stated that after the car returned, that there was additional loud

And I said why don't you take me to his house tomorrow because I was going to ask him myself, with both of them right there. I was tired of the games and I was tired of the stupid lies."

Well, I would suggest to you that that contradicts and that is different from what the defendant has testified to in court. I'd also submit to you that the behavior you've just heard described by the defendant himself in talking to Detective Wells does not amount to adequate provocation. If she made a confession about an affair it was a confession that was forced out of her. It was forced out of her as she was being beaten. We're talking about provocation of a character and degree as would naturally excite and arouse the passions in the mind of a normally reasonable person in the same circumstances.

Well, let me give you what I think is an example of adequate provocation. Let me give you two examples. Example number one. A father returns home after a day at work. He finds a ten-year-old daughter beaten and raped. He goes to the garage. He gets a baseball bat because she tells him the boy who raped her lives next door. And after he gets the baseball bat, he goes outside, sees the boy going to his pickup truck, and goes to the boy and hits him in the head with a baseball bat. Ladies and gentlemen, it's a killing. He died. But it's based on adequate provocation because a person of ordinary and reasonable composition or disposition

would probably have felt the same way.

Example two, adequate provocation. This is a law school example you hear in law school all the time. A man comes home from work. He finds his wife in bed with another man. He goes over the edge. He does something radical and harms or kills one or both.

But that's not the circumstance here. Remember, that in this analysis, in this analysis regarding adequate provocation, it's not some subjective standard set up by the defendant himself. It's not based on his own emotional point of view or disposition. It has to be based on this ordinary, reasonable person in the same circumstance analysis. That's for you to do. That's for you to do in deciding whether this killing was in the heat of passion or was by implied malice and second degree murder.

I was going to go through a few more of these statements the defendant made to Detective Wells. When Detective Wells asked do you think she hit her head on the bathroom floor, the defendant stated, "No. She landed on her upper torso, was in the bedroom, her lower extremities were in the bathroom." He goes on to state from there, "It started before that, man. We were getting into it before that. I mean, I was in the bathroom. She came in there and I pushed her away to get her away from me." He describes earlier on, "We were into it, plain and simple. We were into it. She hit me. I knocked her down. She got back up." Detective

# TESTIMONY OF

# GOVERNMENTS KEY WITNESS

happened next?

A. Through conversation and through my probing, through my additional questions, we both -- he began to cry a little bit, showed emotion. What really was not verbal, was not disclosing any type of detail or really answering my questions in general. And through the course of my questioning, he finally indicated that at some point in time they had gotten into an altercation and that she had hit her head and that was pretty much his only response. There was really no in-detail response or any other answers to any of my questions at that point in time.

Q. In the course of that conversation did he mention firearms?

A. No.

Q. Did he mention that he had done something else?

A. No.

Q. Did he indicate to you what his plans were at that time.

MR. FALCON: Objection. Leading question.

THE COURT: Overruled.

You may answer that.

THE WITNESS: Could you please repeat the question?

MR. PETERSON: Could I have the reporter read it back?

(Thereupon, the question was read by the court reporter.)

THE WITNESS: At that particular point in time, no.

MR. PETERSON: Q. Okay. And that particular point in time you're still seated in the entryway and on the floor, basically?
A. Yes, yes.
Q. Okay. How long did you stay in that location?
A. Five minutes.
Q. Did you discern any -- get anymore information or receive anymore information about the incident from him while you were seated in the entryway location?
A. No.
Q. What happened next?
A. Next I moved into the actual back of the house to my bedroom to finish in getting ready a little bit more for work. And at that point in time he went and sat at my kitchen table. When I left the room, that's when I left -- excuse me. He was sitting at the kitchen table.
Q. How long did it take for you to finish dressing?
A. Just a couple of minutes. I went and put a shirt on.
Q. Do you know Pierre Cartier?
A. Yes, I do.
Q. Is he a friend of yours?
A. An acquaintance more than a friend, but yes, somewhat friendly we are with each other.
Q. Okay. By the way, did you ever visit Brian at his house at 915 N. Adoline?

A. Many times. We spent most of our time there.

Q. Okay. Were you aware of any firearms in his house?

A. Of one.

Q. What kind was that?

A. A shotgun.

Q. Is that a -- do you know what kind of style shotgun?

MR. FALCON: Objection. Calls for speculation.

THE COURT: Overruled.

You may answer.

THE WITNESS: I believe it to be a 12-gauge shotgun.

MR. PETERSON: Q. Do you know if it was a pump or an automatic --

MR. FALCON: Objection. Leading.

MR. PETERSON: Q. -- single shot?

THE COURT: Overruled.

You may answer.

THE WITNESS: I believe pump.

MR. PETERSON: Q. Okay. How many occasions had you seen it?

A. Numerous. I wouldn't have a definite number. Numerous occasions.

Q. Did you ever hear about a shooting that occurred at Pierre Cartier's house?

MR. FALCON: Objection, Your Honor. Relevance.

Hearsay.

THE COURT: Overruled.

You may answer that question yes or no.

THE WITNESS: Yes.

MR. PETERSON: Q. From whom?

A. I can't say with certainty.

Q. Do you remember an interview that was conducted at my office and that was tape recorded and transcribed that occurred on December 28th, 2001?

A. Yes.

Q. And this morning my investigator gave you a copy of this transcript to read; is that correct?

A. Okay. Yes.

Q. And on page 21 of that transcript --

A. May I retract my initial answer to the question?

Q. Yes.

A. I apologize. I do remember as to where I heard about that. It was in the course of conversation on that morning.

Q. From whom?

A. From Brian.

Q. What did he say about it?

A. That throughout the course of the night, prior to arriving at my house, that he had shot at that house, at the residence, Pierre's residence, sorry.

MR. FALCON: Objection. Hearsay, Your Honor. Move to

Q. This is an interview of your statement on October 9th, 2001. I want to show you your transcripts then. Just read the first couple sentences.

THE COURT: Just read it to yourself.

THE WITNESS: Am I reading the incorrect --

THE COURT: Just a moment. All right. You may read that portion to yourself.

THE WITNESS: This top portion?

MR. FALCON: Yeah the first couple sentences.

Q. Now in that particular -- you were having an interview with Solomon Wells, Detective Solomon Wells?

A. Yes, I did.

Q. One of the last questions he asked you, "Well, Brandon, is there anything else you'd like to add"; is that correct?

A. Yes.

Q. And you had said "no"; is that correct?

A. Yes.

Q. Okay. During the conversation you had with Detective Solomon Wells on that occasion, did you ever inform him that Mr. Martin had told you that he had allegedly fired some shots at 1234 N. Arthur?

A. Without looking at the transcript, I couldn't say with certainty. I've only seen my transcript with my interview to Mr. Peterson and Mangee.

Q. Sitting there right now, do you ever remember

making that statement to Detective Wells?

A. Detective Wells, no. I don't recollect.

Q. Now then, in your next time -- when was the first time you informed law enforcement that Mr. Martin had made some statements relative to some gunshots?

A. It would have been in the only other interview I gave.

Q. And that was with Mr. Peterson acting as the interviewer, correct?

A. That's correct.

Q. Did you volunteer that information or how did that come to be?

A. I would have volunteered the information, yes.

Q. Now did Mr. Peterson provide you any background information prior to asking you about this particular event?

A. Background information regards to?

Q. Did he tell you that he had specific information relative to the incident and then ask you questions after he gave that information?

A. Maybe I'm not exactly sure as to what the question is referring to.

Q. Did he tell you in his facts, to the best of their knowledge, it was the shotgun and ammunition that was kept at Mr. Martin's house that could be linked to 1234 N. Arthur?

A. There was an indication that possibly it could have been.

Q. Okay. And then it was after that that you made the statement that Mr. Martin had fired a shotgun, correct, at the residence?

A. I believe so, yes.

Q. And it wasn't until after Mr. Peterson gave you this information that you volunteered this information relative to the shooting; is that correct?

A. I believe that's the time line, yeah.

Q. And isn't it true that you took this information he provided you, general information, then the tape has to be flipped over and then you provide information relative to the shooting?

A. That may be the case.

Q. Let me show you the transcripts.

A. Okay.

Q. BATE stamped 252, counsel.

Starting with this page?

A. Um-hum.

Q. And then going through page 254?

THE COURT: Read that to yourself, please.

THE COURT: Have you had an opportunity to read that?

THE WITNESS: I have.

THE COURT: Next question, please.

MR. FALCON: Q. What did you and Mr. Peterson talk about when this tape was flipped?

A. Nothing that I can recall. It would take a matter

of a couple of seconds to flip that tape, I would imagine.

Q. And then -- okay. When you had this conversation with Mr. Peterson, that was on or about October -- strike that -- December 28th, 2001?

A. Yes.

Q. And were the events fresher in your mind closer to the incident or in December of 2001?

A. Closer to the incident?

Q. Do you see when you read the transcript where Mr. Peterson gave you some information and elicited some questions, isn't it true that you basically gave them the information they wanted to hear on that particular tape?

A. No. I stated the facts to how I knew them.

Q. Isn't it true that Mr. Martin never made that disclosure to you?

A. No. There was a statement made to me.

Q. Then if the statement was made to you, why didn't you disclose it at one of the earlier two opportunities?

A. May have not recalled it at that point in time. Thought it was pertinent to the situation, may not have been asked directly about it. It was not really something that stood out at that period in time, considering the other side of what we were there for. Probably just wasn't there at that particular time in the front of my mind.

Q. Pretty important stuff, don't you think?

MR. PETERSON: Objection. That's argumentative.

THE COURT: Sustained.

MR. FALCON: Q. Who had you talked to prior to meeting with Mr. Peterson relative to getting information about the shooting at 1234 N. Arthur? I don't want you to tell me what they told you, just tell me who you talked to about that.

A. Who have I spoken to about the case in general?

Q. Yes.

A. No one. I kept away from it altogether because I knew at some point in time I would need to disclose the details as I knew, so I stayed away from it altogether.

Q. Never had any conversations with your girlfriend?

A. Probably casually, maybe her asking me questions about it.

Q. Do you see the man seated to the very left of the counsel table?

A. Yes.

Q. Did he try to interview you?

A. What's the name?

Q. Jeff Pearce.

A. Yes. A phone call.

Q. And did you give a statement to Mr. Pearce?

A. I did not.

Q. Why not?

A. At the time he called I had given my testimony to what I believed to be the factual statements. And I believe that both parties, or both sides, would have full knowledge

or full disclosure of those statements, so I felt that the one would suffice.

Q. You gave three statements to the police and you didn't want to give one statement to the defense investigator?

A. Through those three I felt I had given everything I knew at that point in time.

Q. Isn't it true that Mr. Peterson instructed you not to talk to our investigator?

A. That is not --

MR. PETERSON: Objection.

THE WITNESS: -- true.

MR. PETERSON: I'll withdraw the objection.

THE COURT: The objection is overruled or withdrawn. The answer?

THE WITNESS: Not true.

MR. FALCON: Q. And if your girlfriend told us, Estella Molina, where she had a conversation with you, that Mr. Peterson gave you that instruction, you would be lying?

A. I was never told by Mr. Peterson to avoid any contact from anyone from the defensive side.

Q. How about Mary Sondheim, did you ever tell her that Mr. Peterson instructed you not to talk to us?

A. Not that I recall.

Q. Well, you have talked with Mary Sondheim about this particular case, correct?

# CROSS-EXAMINATION OF

# FRESNO POLICE SPECIALIST

# SOLOMAN WELLS

A. Yes, sir.

Q. Now you said you'd been a homicide detective for approximately eleven years?

A. Yes, sir. It would be exactly eleven years this June.

Q. Now have you ever had -- I take it you've investigated all types of homicides; is that correct?

A. Yes, sir.

Q. Now there is classifications of homicides; first, second, manslaughter and even involuntary; manslaughter is that correct? I'll stop and rephrase.

Are you familiar with the term heat of passion?

A. Yes, sir.

MR. PETERSON: Your Honor, I'm going to object to this line of questioning. It seems to be along the lines of calling for legal opinion. I don't know what the relevancy could be.

THE COURT: The objection is sustained on the grounds of relevancy.

MR. FALCON: With regard to homicide investigations, Detective Wells, what type of objective indicia are there to demonstrate heat-of-passion-type of crimes?

MR. PETERSON: Objection. Calls for a legal conclusion.

THE COURT: Sustained.

MR. FALCON: Your Honor.

THE COURT: Sustained. Next question.

MR. FALCON: Could I have a sidebar, Your Honor?

THE COURT: Not now. Next question.

MR. FALCON: Q. You indicated that the particular gun shell in question was dusted for fingerprints; is that correct, Exhibit 59?

A. Yes, sir.

Q. And any confirmation one way or the other there was fingerprints taken from that particular shell?

A. I was informed that the dusting for latent prints proved with negative results.

Q. Now with regard to Exhibit Number 38, the stand-up photograph of the defendant, were you present when that photograph was taken? Do you have that in front of you?

A. Yes, sir.

Q. Okay. You also have 37 in front of you as well? 39. I'm sorry.

A. Yes, sir.

Q. Okay. With specifically to Exhibit Number 38, any blood stains on the apparel of the defendant that you can see?

A. Referenced at 39, sir?

Q. 38, I'm sorry.

A. From this vantage point, no, sir.

Q. Can you tell me, was there any blood that was recovered from the scene at 915 Adoline or pictures of blood taken at 915 Adoline?

# GROUND 1

ATTACHMENTS

don't remember that, counsel, please try to call my attention to that matter.

We'll take up another matter that should be brief. In the motions in limine submitted to the Court is a motion by the defense to bifurcate Counts 1 and 2 in this trial. I've read this motion, it's supporting points and authorities, basically arguing there is improper joinder in these matters and that failure to sever would substantially prejudice the defendant. In viewing the court file I would note that this same motion has previously been filed. It was filed on July 18th, 2002. People filed a different response in opposition to that motion and the matter was on calendar in the criminal law and motion department on July 31st of 2002, and the motion to sever the counts was denied. I do not see anything in the motion that's been tendered to the Court today that is different in any respect from the motion that was previously filed.

Mr. Carpio, is there any changed circumstances or any additional authorities that you wish to cite for purposes of this motion?

MR. CARPIO: No, there's not, Your Honor. I was to submit on the paperwork.

THE COURT: Any argument by the People?

MR. PETERSON: Well, Your Honor, it would be our position, of course, that the matter has been heard and has been decided and a motion was denied and it should be denied

again.

THE COURT: Is the matter submitted?

MR. CARPIO: Yes.

THE COURT: Independently looking at this motion the Court does not find a sufficient basis to warrant a bifurcation of Counts 1 and 2 and the motion to sever is denied. I would also note that the matter, previously having been raised, ruled and no additional information being argued to the Court as a basis for the severance, the matter has previously been denied and it remains denied.

The balance of the motions the Court has not had sufficient time to review. Since lead counsel is not here yet for Mr. Martin, my inclination is to take a recess at this time until 1:30 this afternoon when we would proceed with the motions in limine that have been tendered to the Court.

I would note that one of the motions on behalf of the defendant is a motion to suppress an alleged confession in this matter. Is the detective involved in that matter available for testimony this afternoon on a 402 hearing on that motion?

MR. PETERSON: Your Honor, I have not called the Fresno Police Department to determine that in specific, but he was on call for this trial and I believe he probably should be available. But I do see that attached to defense counsel's motion is an Exhibit A, which is basically a transcript of

# PROOF OF SERVICE BY MAIL BY PRISONER "IN PRO PER"

I HEREBY CERTIFY THAT I AM OVER 18 YEARS OF AGE, THAT I AM REPRESENTING MYSELF, AND THAT I AM A PRISON INMATE. MY PRISON ADDRESS IS SALINAS VALLEY STATE PRISON, P.O. BOX 1050, SOLEDAD, CA 93960-1050.

ON 5-17-07 I SERVED PETITION FOR WRIT OF HABEAS CORPUS (FRESNO COUNTY SUPERIOR COURT NO. 670487-8) BY PLACING THE DOCUMENT IN AN ENVELOPE, WHICH WAS THEN SEALED AND POSTAGE FULLY PAID AND THEREAFTER I CAUSED THE DOCUMENT TO BE MAILED BY FIRST CLASS MAIL. I SERVED THE INDICATED DOCUMENT ON OPPOSING COUNSEL IN THIS ACTION AT THEIR ADDRESSES LISTED:

| | |
|---|---|
| U.S. DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA<br>U.S. COURTHOUSE BUILDING<br>1130 "O" STREET, RM. 5000<br>FRESNO, CA 93721 | ATTY. GENERAL STATE OF CALIFORNIA<br>FRESNO DIVISION<br>2500 MARIPOSA MALL, RM5090<br>FRESNO, CA 93721 |

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE & CORRECT AND WAS EXECUTED AT SOLEDAD, CALIFORNIA.

Brian Martin

BRIAN D. MARTIN

IN PRO PER