1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   BRIAN DOUGLAS MARTIN,                    CASE NO. CV F 07-00765 LJO WMW HC
12                    Petitioner,             **ORDER DENYING PETITION FOR WRIT
                                              OF HABEAS CORPUS WITH
13        vs.                                 PREJUDICE; DIRECTING CLERK OF
                                              COURT TO ENTER JUDGMENT FOR
14   M. S. EVANS,                             RESPONDENT; DECLINING ISSUANCE
                                              OF CERTIFICATE OF APPEALABILITY
15                    Respondent.
16   _____/
17
18        On May 24, 2007, Brian Douglas Martin ("Petitioner"), a *pro se* California prisoner, filed a

19   Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254

20   ("Petition").[1]  On February 4, 2008, M. S. Evans ("Respondent") filed an Answer to the Petition.  On

     March 10, 2008, Petitioner filed a Traverse.  Thus, this matter is ready for decision.
21
22                              **PROCEDURAL HISTORY**

23        On April 10, 2003, a Fresno County Superior Court jury convicted Petitioner of second degree

24   murder (Cal. Penal Code § 187(a)) and shooting at an inhabited dwelling (*id.* § 246).  (2 Clerk's Tr.

25   ("CT") 377, 379, 409-11.)  On May 19, 2003, the superior court sentenced Petitioner to twenty-two years

     to life in state prison.  (*Id.* 409-11.)
26
27   _____

28          [1]      Although petitions for habeas corpus relief are routinely referred to a Magistrate Judge, *see* L.R. 72-302,
     the Court exercises its discretion to address the Petition pursuant to Local Rule 72-302(d).

                                              1

1    On May 19, 2003, Petitioner appealed his conviction and sentence to the California Court of

2    Appeal.  (2 CT 412.)  On March 18, 2005, the court of appeal affirmed the judgment in a reasoned

3    opinion, and on April 4, 2005, denied the request for rehearing.  (Lodged Doc. ("LD") 6, 8.)  On April

4    26, 2005, Petitioner filed a petition for review in the California Supreme Court, which denied the

5    petition on June 8, 2005, stating "[p]etition for review denied without prejudice to any relief to which

6    [Petitioner] might be entitled after this court determines in *People v. Black*, S126182, and *People v.*

7    *Towne*, S125677, the effect of *Blakely v. Washington* (2004) __ U.S. __ 124 S.Ct. 2531, on California

8    law."  (LD 9-10.)

9    On June 6, 2006, Petitioner filed a habeas petition in the Fresno County Superior Court, which

10   denied the petition on June 8, 2006, on procedural grounds and on the merits.  (LD 11-12.)  On August

11   22, 2006, Petitioner filed a habeas petition in the California Court of Appeal, which summarily denied

12   the petition on September 29, 2006.  (LD 13-14.)  On October 12, 2006, Petitioner filed a habeas petition

13   in the California Supreme Court, which summarily denied the petition on April 18, 2007.  (LD 15-16.)

14   On May 24, 2007, Petitioner filed the instant federal Petition.

15                              **FACTUAL BACKGROUND**[2]

16   During the evening of October 8, 2001, [Petitioner] Brian Douglas Martin fired
     a single shotgun blast into Pierre Cartier's residence because he believed that Cartier was
17   having an affair with his wife, Jennifer. He wanted Cartier to stay away from his family.
     [Petitioner] returned home and began arguing with Jennifer about her marital fidelity.
18   After [Petitioner] shoved her to the floor, ripped off her nightgown and choked her, she
     admitted that she was having an affair (but not with Cartier). In response, [Petitioner]
19   choked her again, repeatedly banged her head on the floor and head-butted her. After
     Jennifer lapsed into semi-consciousness, [Petitioner] summoned help from a neighbor
20   and fled. [Petitioner] later told a friend that he had an altercation with Jennifer and he
     was afraid that he had killed her. Jennifer died on October 9 as a result of head injury
21   caused by multiple blunt impacts. [Petitioner] was arrested that same day. He admitted
     to Fresno Police Detective Solomon Wells that he fired a shot into Cartier's residence,
22   pushed Jennifer to the ground three or four times and choked her. He also told the
     detective, "When I had my hands on [Jennifer's] neck I hit her head."
23   An information was filed charging [Petitioner] with murder (the murder count)
     and shooting at an inhabited dwelling (the shooting count). (Pen. Code, §§ 187, subd. (a),
24   246.) [footnote omitted]
25   Jury trial was held in 1993 [sic 2003]. [Petitioner] testified on his own behalf.
     He acknowledged that he had intentionally shot at Cartier's residence and admitted that
26   he choked Jennifer, head-butted her and repeatedly banged her head on the ground during

27        [2]        The Court adopts the factual background from the March 18, 2005, California Court of Appeal opinion
28   on direct review as a fair and accurate summary of the evidence presented at trial.  *See* 28 U.S.C. § 2254(e)(1); *Hernandez*
     *v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002).

1    the course of their argument. [Petitioner] also admitted that he hit Jennifer on a prior
2    occasion. [Petitioner] produced evidence showing that he had consumed six mixed drinks
     shortly before he shot at Cartier's house and battered Jennifer, and he proffered expert
3    testimony about the effects of alcohol intoxication on emotions and capacity for
     judgment. At the close of evidence, the People elected to proceed solely on second
4    degree murder based on an implied malice theory. The defense argued that due to alcohol
     ingestion and provocation caused by Jennifer's admission of infidelity, [Petitioner] was
5    guilty, at most, of voluntary manslaughter. The jury found [Petitioner] guilty of both
     offenses as charged in the information.

6    (LD 6 at 2-3.)

7                                **PETITIONER'S CLAIMS**

8    1.    The trial court abused its discretion and denied Petitioner due process of law when it denied

9          Petitioner's motion to sever the murder count and the shooting count (Pet. 5, 26);[3]

10   2.    The trial court denied Petitioner a complete defense and the right to confront witnesses by

11         precluding Petitioner from cross-examining the prosecution's expert witness (*id.* 7, 26);

12   3.    Prosecutorial misconduct (*id.* 8, 26);

13   4.    Plain error affecting Petitioner's constitutional rights (*id.* 10, 26);

14   5.    Ineffective assistance of trial counsel (*id.* 26); and

15   6.    Ineffective assistance of appellate counsel (*id.*).

16                                **STANDARD OF REVIEW**

17         The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996,

18   Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is thus subject to its

19   provisions. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997).  The standard of review applicable to

20   Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

21        (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant
          to the judgment of a State court shall not be granted with respect to any claim that was
22        adjudicated on the merits in State court proceedings unless the adjudication of the claim–
               (1) resulted in a decision that was contrary to, or involved an unreasonable
23             application of, clearly established Federal law, as determined by the Supreme
               Court of the United States; or
24             (2) resulted in a decision that was based on an unreasonable determination of the
               facts in light of the evidence presented in the State court proceeding.
25
     28 U.S.C. § 2254(d).
26
27         Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of

28        ───────────────
             [3]        For ease of reference, the Court utilizes the CM/ECF pagination for the Petition.

                                              3

state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.6 (9th Cir. 2000).  Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000) (as amended).  On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06.  When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *Williams*, 529 U.S. at 406.  However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable* determination of the facts.'" *Early*, 537 U.S. at 11 (*quoting* 28 U.S.C. § 2254(d)).  Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." *Woodford*, 537 U.S. at 24-25, 27.  An "unreasonable application" is different from an "erroneous" or "incorrect" one. *Williams*, 529 U.S. at 409-10; *see also Waddington v. Sarausad*, __ S. Ct. __, No. 07-772, 2009 WL

1   129033, at *8 (Jan. 21, 2009); *Woodford*, 537 U.S. at 25.

2       A state court factual determination must be presumed correct unless rebutted by clear and

3   convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, a state court's interpretation of state law,

4   including one announced on direct appeal of the challenged conviction, binds a federal court sitting in

5   habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

6                                    **DISCUSSION**

7                                    **Claim One**

8       In his first claim, Petitioner challenges the trial court's refusal to sever trial of the murder count

9   from trial of the shooting count as an infringement of his due process rights. (Pet. 5.) Because the

10  California Supreme Court summarily denied this claim (*see* LD 16), the Court must "look through" to

11  the last reasoned decision, that of the California Court of Appeal on direct review. *See Ylst v.*

12  *Nunnemaker*, 501 U.S. 797, 803-05 (1991). In denying Petitioner's claim, the court of appeal stated:

13          In July 2002, [Petitioner] moved for severance of two counts, arguing that the
            offenses are unconnected in their commission and are not within the same class of
14          crimes. The motion was denied without [sic] statement of reasons. [Petitioner] reiterated
            this motion in limine. The trial court refused to sever trial of the two counts, stating that
15          it did "not find a sufficient basis to warrant a bifurcation."

            [Petitioner] challenges this ruling as reversible error. He argues that the two
16          counts were improperly joined. Furthermore, even if joinder was statutorily permitted,
            failure to sever the counts was an abuse of judicial discretion and infringed his federal
17          constitutional due process and fair trial rights. Neither of these arguments is persuasive.

            In relevant part, section 954 permits different criminal charges to be joined in a
18          single accusatory pleading when the offenses are "connected together in their
            commission" or are "of the same class of crimes or offenses." (§ 954.) "Because
19          consolidation ordinarily promotes efficiency, the law prefers it." (*People v. Ochoa* (1998)
            19 Cal.4th 353, 409.) We review the lower court's ruling on a motion to sever counts
20          under the deferential abuse of discretion standard. (*Id.* at p. 408.)

            In this case, the requirements for permissive joinder were met because the two
21          offenses, although directed at different victims, were connected in their commission.
            Crimes are connected together in their commission when there is a common element of
22          substantial importance between them. (*People v. Miller* (1990) 50 Cal.3d 954, 987
            (*Miller*).) [Petitioner]'s jealousy concerning Jennifer's marital affections constitutes a
23          common element of substantial importance because it was the underlying motivation for
            both offenses. The shooting and the murder both resulted from [Petitioner]'s jealousy and
24          his fury over her infidelity. [Petitioner] shot at Cartier's residence because he believed
            that Cartier was having an affair with Jennifer and he wanted Cartier to stay away from
25          her. Immediately after [Petitioner] returned home, he argued with Jennifer about her
            loyalty. It was her admission of infidelity that sparked the fatal beating. Thus, both
26          offenses were part of a continuing course of conduct during the evening of October 8 and
            early morning hours of October 9 that culminated in Jennifer's death.

27          "A defendant can prevent consolidation of properly joined charges only with a
            'clear showing of prejudice' [citation]...." (*People v. Mason* (1991) 52 Cal.3d 909, 935.)
28          When joinder is statutorily permissible, denial of a severance motion constitutes an abuse

                                            5

1
    of discretion only if joinder of the offenses "presented a substantial danger of prejudice."
(*People v. Mayfield* (1997) 14 Cal.4th 668, 720.) In this case, prejudice does not appear.

2
        First, much of the evidence concerning the shooting would have been admissible
during the murder trial. Similarly, evidence that [Petitioner] fought with Jennifer about

3
her fidelity would have been relevant to establish motive for the shooting.
Cross-admissibility is generally sufficient to dispel any inference of prejudice. (*Miller,

4
supra*, 50 Cal.3d at p. 987.)
        Second, although Jennifer's death is tragic and [Petitioner]'s conduct

5
reprehensible, the circumstances surrounding this killing are not so heinous that it is
likely that the jury would have been inflamed against [Petitioner] and unable to

6
independently and fairly consider the shooting count. The opposite also is true. No one
was injured as a result of the shooting and it was undisputed that [Petitioner] did not

7
intend to kill Cartier or the residents of the house.
        Finally, the prosecutor did not join a weak case to a strong one. Since [Petitioner]

8
admitted committing the substance of both offenses both prior to trial and during his
testimony, the People had a strong case on both counts. There was not a spillover effect

9
from the aggregate evidence on the combined charges that might have altered the
outcome. The only real question presented at trial was whether the homicide was second

10
degree murder or voluntary manslaughter. For the reasons discussed above, it is not
reasonably likely that the presence of the shooting count could have affected the jury's

11
determination on this disputed question. This is also because no evidence was presented
showing that [Petitioner] had threatened to shoot Jennifer, that he had menaced her with

12
the shotgun, or even that he had threatened to kill Cartier. In light of these facts, it is not
reasonably possible that the jury would have implied malice towards Jennifer from the

13
act of shooting at Cartier's residence.
        In the absence of legal error or prejudice, denial of the severance motion was not

14
an abuse of discretion and the ruling did not infringe [Petitioner]'s constitutional rights
to due process and a fair trial. (*People v. Musselwhite* (1998) 17 Cal.4th 1216,

15
1243-1246; *Miller, supra*, 50 Cal.3d at pp. 986-989.)

16
(LD 6 at 4-6.)

17
    Habeas relief on a joinder challenge can be granted only "if the joinder resulted in an unfair trial.

18
There is no prejudicial constitutional violation unless simultaneous trial of more than one offense . . .

19
actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process."

20
*Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (as amended) (*quoting Sandoval v. Calderon*, 241

21
F.3d 765, 771-72 (9th Cir. 2001) (as amended)) (internal quotation marks omitted). "The requisite level

22
of prejudice is reached only 'if the impermissible joinder had a substantial and injurious effect or

23
influence in determining the jury's verdict.'" *Id.* (*quoting Sandoval*, 241 F.3d at 772). "In evaluating

24
prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of

25
'spillover' from one charge to another, especially where one charge or set of charges is weaker than

26
another." *Id.*; *see Sandoval*, 241 F.3d at 772 ("We have recognized that the risk of undue prejudice is

27
particularly great whenever joinder of counts allows evidence of other crimes to be introduced in a trial

28
where the evidence would otherwise be inadmissible. Undue prejudice may also arise from the joinder

1   of a strong evidentiary case with a weaker one.") (citation omitted); *Bean v. Calderon*, 163 F.3d 1073,

2   1084 (9th Cir. 1998).

3          As stated by the court of appeal, the shooting count and the murder count, although directed at

4   different victims, were connected in their commission.  Petitioner's jealousy concerning Jennifer's

5   marital affections and infidelity was the underlying motivation for the both the murder and the shooting.

6   (*See, e.g.*, 6 Rep.'s Tr. ("RT") 891-93.)  Petitioner shot at Cartier's residence because he believed that

7   Cartier was having an affair with Jennifer and he wanted Cartier to stay away from her.  (*Id.* 891-92.)

8   Immediately after Petitioner returned home, he argued with Jennifer about her loyalty, and it was her

9   admission of infidelity that sparked the fatal beating.  Both offenses were part of a continuing course of

10  conduct during the evening of October 8, 2001, and early morning hours of October 9, 2001, that

11  culminated in Jennifer's death.  Much of the evidence concerning the shooting would have been

12  admissible during the murder trial and conversely, evidence that Petitioner fought with Jennifer about

13  her fidelity would have been relevant to establish motive for the shooting.  *See Davis*, 384 F.3d at 638

14  (stating cross-admissibility is a factor against severance).

15         In addition, as stated by the court of appeal, a weak case was not joined to a strong one because

16  Petitioner admitted to committing the substance of both offenses prior to trial and during his trial

17  testimony.  (*See, e.g.*, 4 RT 491, 496; 6 RT 891, 897-901); *Davis*, 384 F.3d at 638.  There is also no

18  spillover effect from the aggregate evidence on the combined charges that might have altered the

19  outcome on each count.  It is not reasonably likely that the presence of the shooting count could have

20  affected the jury's determination on the murder count because no evidence was presented showing

21  Petitioner had threatened to shoot Jennifer, menaced her with the shotgun, or even threatened to kill

22  Cartier.  Conversely, the circumstances surrounding the killing are not so heinous such that the jury

23  would have been inflamed against Petitioner and unable to independently and fairly consider the

24  shooting count.  No one was injured as a result of the shooting and it was undisputed that Petitioner did

25  not intend to kill Cartier or the residents of the house.  (*See, e.g.*, 4 RT 456-80; 6 RT 891.)

26         Petitioner also fails to support his assertion that the denial of severance forced him to admit to

27  the shooting count at trial to defend against the murder count "even though [the shooting count] was not

28  proven with testimony or evidence by the prosecution."  (Pet. 29.)  Petitioner states that had severance

been granted he would have invoked his Fifth Amendment right against self-incrimination on the shooting count and "a more favorable outcome would have occurred." (Pet. 29; Traverse 14.) To obtain severance because of a prejudicial effect on a defendant's choice to testify, a defendant "must show that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed." *United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983). Although Petitioner's testimony was arguably important on the murder count in an attempt to establish heat-of-passion and avoid a murder conviction, Petitioner does not show a "strong need to refrain from testifying" on the shooting count in light of his pre-trial admission to the shooting and evidence indicating that Petitioner's shotgun, unrecovered from his home, was used in the shooting. (*See, e.g.*, 4 RT 496, 546-59); *United States v. Balzano*, 916 F.2d 1273, 1283 (7th Cir. 1990) ("[A] defendant fails to make a convincing demonstration of a strong need to refrain from testifying on particular counts when[, w]ithout [the defendant's] testimony, the government offered sufficient evidence to support the jury's verdict on these counts." (internal quotation marks omitted)).

Finally, any prejudice can be limited through an instruction directing the jury to consider each count separately. *See Davis*, 384 F.3d at 639. Here, the jury was instructed that each count was a distinct crime and to consider each count separately. (*See* 7 RT 1084-85; 2 CT 304.) A jury is presumed to have followed the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). In addition, jury "instructions have a better chance of effectiveness 'when the evidence of each crime is simple and distinct, even in the absence of cross-admissibility.'" *Davis*, 384 F.3d at 639 (*quoting Bean*, 163 F.3d at 1084-85). Here, the evidence was not only cross-admissible, but distinct and straightforward as discussed.

Accordingly, and for the foregoing reasons, Petitioner's trial was not rendered fundamentally unfair by the trial court's denial of severance. *Davis*, 384 F.3d at 638. The Court finds that the California courts' rejection of Petitioner's severance claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

**Claim Two**

In his second claim, Petitioner asserts that the trial court violated his confrontation right and right

to present a defense when it precluded Petitioner from cross-examining the prosecution's expert witness. (Pet. 7.) Because the California Supreme Court summarily denied this claim (*see* LD 16), the Court must "look through" to the last reasoned decision, that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803-05. In rejecting Petitioner's claim, the court of appeal stated:

> Homicide detective Solomon Wells testified for the People as the investigating officer. During defense counsel's cross-examination of Detective Wells, he asked whether the detective was familiar with the term "heat of passion." The prosecutor objected and the court sustained the objection on relevancy grounds. Defense counsel then asked: "With regard to homicide investigations, Detective Wells, what type of objective indicia are there to demonstrate heat-of-passion-type crimes?" The trial court sustained the prosecutor's objected [sic] to the question as calling for a legal conclusion.
>
> At the end of the court day, the court and counsel stated their positions on the record. The court explained its ruling as follows: "The Court's ruling was based upon what appeared to be questions that were calling for a legal opinion, and if they were just asking for this person's opinion other than a legal opinion, then the Court felt there was no relevancy to the subject area that was being questioned." Defense counsel explained his position, in relevant part:
>
> > "I believe [Detective Wells] to be an expert in the area of homicide investigation[s].... I believe he has opinions as to ... what factors are normally looked for in crimes of heat of passion. It's relative to [the] injury sustained by the particular victim[]. Primarily, Your Honor, my offer of proof would be in instances of heat of passion crimes that there are significantly a lot of injuries that are accompanying a heat of passion case as opposed to cases of premeditated murder where you just have one or two shots generated to directed organs and the persons are in and out, and where you have crimes of heat of passion[] there are multiple stab wounds, multiple injuries to show there was frustration by the perpetrator against the victim. The People were allowed to introduce[] photos of 27 bruises.... I believe they're going to be arguing that this shows malice aforethought. I believe I should be able to inquire what this officer shows, given his prior experience in homicide investigations, is also consistent with heat of passion crimes [*sic*]. Now I'm sure he's going to say it goes both ways, but I would like to have some testimony relevant to that fact."
>
> The court reiterated its earlier ruling, concluding: "This is calling for speculation on the part of the witness. Even if the witness had prior experience relative to this, to allow the opinion to come in would be tantamount to allowing the witness to testify as to legal standards under heat of passion, adequate provocation, and on that basis the Court finds it's inappropriate pending testimony and it is excluded."
>
> At the close of evidence, the prosecutor elected to proceed only on second degree murder based on an implied malice theory. When the case was given to the jury, both the prosecutor and defense counsel agreed that [Petitioner] had acted impetuously and that he did not intend to kill his wife. In his closing arguments, the prosecutor acknowledged that [Petitioner] "was acting in a rage" when he battered Jennifer to death. The prosecutor did not argue that [Petitioner] intended to kill Jennifer. He referred to the 27 injuries twice. Both references were made to rebut defense counsel's position that [Petitioner] did not know that he was harming Jennifer, either because he was intoxicated or because he did not realize that his acts could endanger her life. During defense counsel's closing argument, he stated, "The prosecutor himself told you there was no intent to kill. [Petitioner] did not intend to kill his wife. There's no evidence to suggest

9

1  he intended to kill his wife."

2      Now, [Petitioner] contends that the murder conviction must be reversed because defense counsel was erroneously prevented from eliciting testimony from Detective

3  Wells "explaining to the jury that the severity of Jennifer's injuries supported his position that he acted impetuously in the heat of passion rather than with the intent to kill."[4] As will be explained, this argument fails because the asserted error is harmless, even if

4  assessed under the stringent standard set forth in *Chapman v. California* (1967) 386 U.S. 18.

5      First, the argument that was anticipated by defense counsel and upon which defense counsel based his theory of relevance did not materialize. When the trial court

6  made the contested ruling the People had not yet explicitly stated that they would not pursue a murder theory premised on the existence of intent to kill or actual malice.

7  However, the prosecutor ultimately decided not to pursue a murder theory based on intent to kill or actual malice. He proceeded only on second degree murder based on

8  implied malice. The prosecutor did not argue in closing that [Petitioner] intended to kill Jennifer; he did not rely on the extent of Jennifer's injuries to prove the existence of

9  intent to kill or actual malice. Rather, the parties agreed that [Petitioner] had acted impetuously without intent to kill. The jurors were not instructed on intent to kill. When

10  the case was given to them, lack of intent to kill was undisputed. *People v. Pensinger* (1991) 52 Cal.3d 1210, 1238, and *People v. Shaver* (1936) 7 Cal.2d 586, 594, cited by

11  [Petitioner], are distinguishable on this basis. In both of these cases, appellant was convicted of first degree murder and the People had relied on the condition of the body

12  to prove premeditation.

13      Second, it has long been understood that "heat of passion" killings have an objective and a subjective component. *People v. Logan* (1917) 175 Cal. 45 explains: "In

14  the present condition of our law it is left to the jurors to say whether or not the facts and circumstances in evidence are sufficient to lead them to believe that the defendant did,

15  or to create a reasonable doubt in their minds as to whether or not he did, commit his offense under a heat of passion.... [T]his heat of passion must be such a passion as would

16  naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances, and that, consequently, no defendant may set up his own standard of

17  conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe [sic] that the facts and circumstances were sufficient to arouse the

18  passions of the ordinarily reasonable man." (*Id.* at pp. 48-49; see also CALJIC No. 8.42.) In this case, the subjective component, i.e., that [Petitioner] had acted while inflamed

19  with passion resulting from his wife's admission of infidelity, was undisputed. It was the objective component that was disputed. [Petitioner] has not shown that Detective Wells

20  could have offered testimony that was relevant to this issue. The condition of the crime scene and of Jennifer's body could not reveal, even to a homicide expert, whether the

21  passion culminating in the murderous violence was objectively reasonable.

       Finally, [Petitioner] did not argue, either below or in this forum, that testimony

22  about the "objective indicia [of] heat-of-passion-type crimes" would have been relevant to the mental state required for second degree implied malice killings. (See CALJIC No.

23  8.31.)

       Since it was undisputed when the jury received this case that [Petitioner] had not

24  intended to kill Jennifer, the asserted basis for relevancy did not materialize. It is not reasonably possible that the challenged ruling could have affected the verdict or infringed

25  [Petitioner]'s substantial constitutional rights. Thus, even assuming error, it is harmless.

26

27      [4]      [California Court of Appeal footnote 2:] We note that [Petitioner]'s appellate argument makes two assumptions that are not supported by the record: (1) Detective Wells's expertise; and (2) that the condition of Jennifer's body

28  and the crime scene are entirely consistent with a spontaneous killing. Defense counsel did not make an offer of proof establishing either Detective Wells's expertise or the content of his proposed testimony.

1  (LD 6 at 6-10.)

2      The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to

3  be confronted with the witnesses against him," U.S. Const. amend. VI, and "the Constitution [further]

4  guarantees criminal defendants a meaningful opportunity to present a complete defense," *Crane v.*

5  *Kentucky*, 476 U.S. 683, 690 (1986).  The Supreme Court has explained that the right of confrontation

6  "means more than being allowed to confront the witness physically," but rather "[t]he main and essential

7  purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v.*

8  *Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted); *Slovik v. Yates*,

9  545 F.3d 1181, 1186 (9th Cir. 2008).  The Confrontation Clause does not prevent a trial judge from

10  imposing "reasonable limits on such cross-examination based on concerns about, among other things,

11  harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or

12  only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Slovik*, 545 F.3d at

13  1186.

14      Nevertheless, the Supreme Court has held that a defendant's Confrontation Clause rights have

15  been violated when he is "prohibited from engaging in otherwise *appropriate* cross-examination . . . and

16  thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences

17  relating to the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680 (*quoting Davis*, 415 U.S. at 318)

18  (emphasis added).  Accordingly, the defendant has met his burden when he has shown that "[a]

19  reasonable jury might have received a significantly different impression of [a witness'] credibility had

20  . . . counsel been permitted to pursue his proposed line of cross-examination." *Id.*

21      Review of the limitation on cross-examination is conducted on each witness separately. *See*

22  *United States v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007) (*citing Van Arsdall*, 475 U.S. at 680).  In

23  addition, Confrontation Clause errors are subject to harmless-error analysis. *Winzer v. Hall*, 494 F.3d

24  1192, 1201 (9th Cir. 2007).  Errors are harmless if they do not have a "substantial and injurious effect

25  or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see*

26  *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007); *Winzer*, 494 F.3d at 1201.

27      The Court finds that the trial court imposed "reasonable limits" on the detective's cross-

28  examination that did not run afoul of the Confrontation Clause or infringe Petitioner's right to present

11

1   a defense.  Preliminarily, the Court notes that Petitioner does not argue or show that he wanted to

2   impugn the detective's credibility, but instead wants to utilize some alleged opinion of heat-of-passion

3   crimes to which the detective would have purportedly testified.  As indicated in the court of appeal's

4   analysis, Petitioner has not shown how his proposed cross-examination would have supported his

5   defense or otherwise had a substantial effect or influence on the outcome of the trial.

6        Even assuming that the trial court erred in preventing questioning of heat-of-passion crimes, any

7   such error was harmless.  *Brecht*, 507 U.S. at 623.  As stated by the court of appeal, the prosecutor did

8   not pursue a theory of intent to kill, and the condition of the crime scene could not have revealed

9   whether the passion culminating in the murderous violence was objectively reasonable under California

10  law.  (*See* LD 6 at 7-9.)

11        Accordingly, the Court finds that the California courts' rejection of Petitioner's confrontation

12  and right to present a defense claims was neither contrary to, nor an unreasonable application of, clearly

13  established federal law as determined by the United States Supreme Court.  Thus, habeas relief is not

14  warranted on this claim.

15                              **Claim Three**

16        In his third claim, Petitioner alleges several instances of prosecutorial misconduct.  (Pet. 8, 31;

17  Traverse 29.)  Because the California Supreme Court summarily denied this claim (*see* LD 16), the Court

18  must "look through" to the last reasoned decision, that of the Fresno County Superior Court on habeas

19  review.  (*See* LD 11-12); *Ylst*, 501 U.S. at 803-05.  In rejecting Petitioner's claim, the superior court

20  stated:

21        [T]he court finds that existing evidence does not justify the requested relief.  In reaching
        this conclusion, the court notes that many of the issues [P]etitioner raises either were or
22      could have been raised by appeal.  Such issues will not be reconsidered by way of writ
        petition.  (*In re Seaton* (2004) 34 Cal.4th 193, *In re Harris* (1993) 5 Cal.4th 813, *In re*
23      *Clark* (1993) 5 Cal.4th 750, and *Ex parte Dixon* (1953) 41 Cal.2d 756.)

24  (LD 12 at 1.)  Based on the superior court's language, it appears that the court reached the merits in

25  denying Petitioner's claims, yet also relied on procedural grounds.  Because it is not unambiguous as to

26  the superior court's basis of denial, this Court reviews Petitioner's claim with deference to the superior

27  court mandated by 28 U.S.C. § 2254(d).  *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 263 (1989) (stating

28  procedural default can only block a claim in federal court if the state court "clearly and expressly states

1    that its judgment rests on a state procedural bar") (internal quotation marks omitted).[5]

2          A habeas petition alleging prosecutorial misconduct will be granted only when the misconduct

3    did "so infect the trial with unfairness as to make the resulting conviction a denial of due process."

4    *Greer v. Miller*, 483 U.S. 756, 765 (1987) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643

5    (1974)); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "[T]he touchstone of due process

6    analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

7    prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  A prosecutor's challenged remarks are viewed

8    in the context of the entire trial.  *See Greer*, 483 U.S. at 765-66; *see also Donnelly*, 416 U.S. at 639-43.

9          Petitioner alleges that the prosecutor: 1) misstated Petitioner's testimony during closing

10   arguments; 2) coached a prosecution witness; 3) stated his opinion to the jury; and 4) kept testimonial

11   evidence favorable to Petitioner's defense "out of the trial."  (*See* Pet. 40.)

12         Petitioner fails to explain how the prosecutor misstated his testimony during closing argument,

13   and Petitioner's conclusory allegation is insufficient to raise a cognizable claim of prosecutorial

14   misconduct.  (*See* Traverse 23-26); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (finding a

15   petitioner's conclusory allegations did not meet the specificity requirement); *James v. Borg*, 24 F.3d 20,

16   26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do

17   not warrant habeas relief.").  Petitioner also argues that in misstating his testimony, the prosecutor

18   committed misconduct by criticizing Petitioner's credibility.  (Pet. 40-41.)  However, when a defendant

19   chooses to testify his or her demeanor is a relevant consideration for the jury in evaluating the

20   defendant's credibility.  *See United States v. Schuler*, 813 F.2d 978, 981 n.3 (9th Cir. 1987); *see also*

21   *Allen v. Woodford*, 395 F.3d 979, 997 (9th Cir. 2005).  In addition, a prosecutor does not engage in

22   misconduct when he labels a witness' testimony as lacking credibility or including lies or fabrication.

23   *See Turner v. Marshall*, 63 F.3d 807, 818 (9th Cir. 1995), *overruled on other grounds*, *Tolbert v. Page*,

24   182 F.3d 677,685 (9th Cir. 1999) (en banc); *see also United States v. Trevino*, 419 F.3d 896, 902 (9th

25         _____

26   [5]      Respondent argues that Petitioner's prosecutorial misconduct claims are procedurally defaulted.  (Answer
     15-18.)  When the claims raised in a habeas petition are easier to resolve on the merits, the interests of judicial economy
     counsel against deciding the more complex or uncertain procedural default issues.  *See Franklin v. Johnson*, 290 F.3d 1223,

27   1232 (9th Cir. 2002) (*citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Batchelor v. Cupp*, 693 F.2d 859,
     864 (9th Cir. 1982).  Because such a situation exists here, the Court addresses Petitioner's prosecutorial misconduct claims

28   on the merits.

                                                        13

Cir. 2005).  Furthermore, a prosecutor is permitted to argue reasonable inferences from the evidence.  *Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995).  "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."  *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996).

Petitioner also argues that the prosecutor improperly "coached" a prosecution witness.  (Pet. 40; Traverse 26-30.)  Here again, although Petitioner attaches portions of the trial transcript, Petitioner fails to demonstrate that the prosecutor committed misconduct or that the witness was coached in any way.  *Jones*, 66 F.3d at 204-05; *James*, 24 F.3d at 26.

In addition, Petitioner states that during closing argument the prosecutor gave an opinion of what constituted adequate provocation, and that this constitutes misconduct.  (Traverse 30-31.)  However, as previously stated, counsel are given wide latitude during closing arguments and are permitted to argue reasonable inferences from the evidence, and Petitioner has not shown that the prosecutor rendered the trial fundamentally unfair.  *Ceja*, 97 F.3d at 1253-54; *Duckett*, 67 F.3d at 742.

Finally, Petitioner argues that the prosecutor committed misconduct by objecting to the testimony of the detective as to heat-of-passion crimes.  However, as discussed in Claim Two, *supra*, the trial court did not improperly exclude testimony of the detective's alleged opinion of heat-of-passion crimes.  Therefore, the prosecutor did not commit misconduct in objecting on relevancy grounds as to the detective's testimony.

Even assuming the prosecutor's comments to the jury were improper, they did not "so infect[] the trial with unfairness."  *Darden*, 477 U.S. at 181; *see also Brecht*, 507 U.S. at 623.  The trial court instructed the jurors that their decision was to be based only on the evidence produced in court (*see* 1 CT 238), and the jurors were specifically admonished that counsel's statements were not evidence (*see id.* 239).  The jury was also instructed not to be influenced by "sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling."  (1 CT 239.)  These admonishments and instructions significantly limited any prejudice caused by the prosecutor's remarks.  *See Weeks*, 528 U.S. at 234 (stating jury is presumed to have followed court's instructions); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir. 1991) (holding prosecutor's improper comments were isolated moments in a three day trial,

1    and their effect was mitigated by judge's instructions that closing arguments were not evidence, and the

2    strong proof of the defendant's guilt).

3          Accordingly, the Court finds that the California courts' rejection of Petitioner's prosecutorial

4    misconduct claims was neither contrary to, nor an unreasonable application of, clearly established federal

5    law as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this

6    claim.

7                                          **Claim Four**

8          In his fourth claim, Petitioner contends that "plain error(s)" violated his constitutional rights.

9    (Pet. 10.)  Specifically, Petitioner claims that the instances of alleged prosecutorial misconduct pled in

10   Claim Three, *supra*, constitute plain error.  (*Id.* 32.)  Because the California Supreme Court summarily

11   denied this claim (*see* LD 16), the Court must "look through" to the last reasoned decision, that of the

12   Fresno County Superior Court on habeas review.  (*See* LD 11-12); *Ylst*, 501 U.S. at 803-05.  In rejecting

13   Petitioner's claim, the superior court stated:

14              [T]he court finds that existing evidence does not justify the requested relief.  In reaching
                this conclusion, the court notes that many of the issues [P]etitioner raises either were or
15              could have been raised by appeal.  Such issues will not be reconsidered by way of writ
                petition.  (*In re Seaton* (2004) 34 Cal.4th 193, *In re Harris* (1993) 5 Cal.4th 813, *In re*
16              *Clark* (1993) 5 Cal.4th 750, and *Ex parte Dixon* (1953) 41 Cal.2d 756.)

17   (LD 12 at 1.)  The Court reviews Petitioner's plain error claim under § 2254(d) deference to the superior

18   court's finding.  *See supra* Claim Three; *Harris*, 489 U.S. at 263.[6]

19         The Court finds the instant claim duplicates Petitioner's prosecutorial misconduct claim in Claim

20   Three, *supra*.  Because the Court finds no prosecutorial misconduct, the instant claim fails.  Accordingly,

21   the Court finds that the California courts' rejection of Petitioner's plain error claim was neither contrary

22   to, nor an unreasonable application of, clearly established federal law as determined by the United States

23   Supreme Court.  Thus, habeas relief is not warranted on this claim.

24                                          **Claim Five**

25         In his fifth claim, Petitioner alleges various instances of ineffective assistance of trial counsel.

26   (Pet. 33-34.)  Because the California Supreme Court summarily denied this claim (*see* LD 16), the Court

27   _____

28         [6]     The Court reaches the merits of this claim despite any asserted procedural bar.  *See supra* note 5; *Franklin*,
         290 F.3d at 1232; *Batchelor*, 693 F.2d at 864.

must "look through" to the last reasoned decision, that of the Fresno County Superior Court on habeas

review.  (*See* LD 11-12); *Ylst*, 501 U.S. at 803-05.  In rejecting Petitioner's claim, the superior court

stated:

> [T]he court finds that existing evidence does not justify the requested relief. . . .
> Furthermore, to support a claim of ineffective assistance of counsel, [P]etitioner must
> establish that the trial and appellate attorneys' conduct was not only deficient, but it was
> also prejudicial. (See, e.g., *Young v. Runnels* (9th Cir. 2006) 435 F.3d 1038, *In re Fields*
> (1990) 51 Cal.3d 1063, *In re Visciotti* (1996) 14 Cal.4th 325, and *Strickland v.
> Washington* (1984) 466 U.S. 668.)  Existing documentation does not establish any such
> prejudicial error.

(LD 12 at 1-2.)

For a petitioner to prevail on an ineffective assistance of counsel claim, he must show: (1) that

counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance.

*Strickland*, 466 U.S. at 687.  A court evaluating an ineffective assistance of counsel claim does not need

to address both components of the test if the petitioner cannot sufficiently prove one of them.  *Id.* at 697;

*Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

To prove deficient performance, a petitioner must show that counsel's representation fell below

an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88.  Because of the difficulty in

evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance."  *Id.* at 689.  Only if counsel's acts or omissions,

examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally

competent assistance will the petitioner prove deficient performance.  *Id.* at 690; *United States v.

Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).  The petitioner must overcome the presumption

that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

Establishing counsel's deficient performance does not warrant setting aside the judgment if the

error had no effect on the judgment.  *Id.* at 691; *Seidel v. Merkle*, 146 F.3d 750, 757 (9th Cir. 1998).  A

petitioner must show prejudice such that there is a reasonable probability that, but for counsel's

unprofessional errors, the result would have been different.  *Strickland*, 466 U.S. at 694.  Thus, the

petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was

fundamentally unfair or unreliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Petitioner claims that his attorney "failed to object to obvious prosecutional [sic] misconduct," allegedly when the prosecutor in closing argument misstated Petitioner's testimony and offered the jury his opinion. (Pet. 43.) As stated in Claim Three, *supra*, the prosecutor committed no misconduct during closing argument and thus, counsel was not ineffective for failing to make an objection. Even assuming prosecutorial misconduct, a reasonable attorney, upon hearing a single improper remark by the prosecutor, may elect not to highlight the harmful statement by objecting to it. *See United States v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991) (finding competent counsel may decide to "refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality"); *see also United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (stating that the failure to object during closing argument is generally within the range of permissible professional legal conduct). Instead, counsel may reasonably choose to rely on the standard jury instruction that counsel's statements are not evidence. (*See* 1 CT 239.)

Petitioner next alleges that his attorney told him that he could not view certain phone records that Petitioner believed would prove that "an affair took place." (Pet. 44.) Upon viewing the state court record, Petitioner complains that no court order forbade him from viewing the records. (*Id.*) However, Petitioner does not allege that his attorney told him that a court order existed; therefore, Petitioner does not show that his attorney's statement was untrue. Even if Petitioner's assertion is correct, he fails to demonstrate prejudice because it was not Petitioner's job to "prove" anything; rather, it was his attorney's duty to introduce evidence and make appropriate arguments. The prosecution had the burden of proof beyond a reasonable doubt, and the defense had no corresponding burden of proof. Petitioner cannot show how his defense was harmed by Petitioner's inability to view any phone records during trial.

Petitioner further alleges that counsel "relied solely on Detective Wells [sic] testimony for heat of passion crimes," and that when the state trial court sustained objections to this testimony, counsel "did not entertain or pursue an alternative strategy or tactic." (Pet. 44.) Even assuming trial counsel erred by not pursuing a "strategy or tactic" of introducing other heat-of-passion crimes testimony, the failure to introduce such testimony did not prejudice Petitioner as discussed in Claim Two, *supra*.

1    Finally, Petitioner alleges that his attorney "failed to renew the severance motion at the end of

2    the trial." (Pet. 44.) However, as discussed in Claim One, *supra*, the court of appeal properly found no

3    "legal error or prejudice" as a result of the denial of Petitioner's severance motion. Petitioner does not

4    offer any reason why the trial court would have reversed its ruling on his motion.

5    Based on the foregoing, Petitioner has failed to show trial counsel's performance was deficient.

6    *Strickland*, 466 U.S. at 687-88. Moreover, even if trial counsel's performance was deficient, Petitioner

7    has failed to show the result of the trial would have been any different. *Id.*

8    Accordingly, the Court finds that the California courts' rejection of Petitioner's ineffective

9    assistance of trial counsel claim was neither contrary to, nor an unreasonable application of, clearly

10   established federal law as determined by the United States Supreme Court. Thus, habeas relief is not

11   warranted on this claim.

12   **Claim Six**

13   In his sixth and final claim, Petitioner alleges ineffectiveness of appellate counsel. (Pet. 44.)

14   Because the California Supreme Court summarily denied this claim (*see* LD 16), the Court must "look

15   through" to the last reasoned decision, that of the Fresno County Superior Court on habeas review. (*See*

16   LD 11-12); *Ylst*, 501 U.S. at 803-05. In rejecting Petitioner's claim, the superior court stated:

17   [T]he court finds that existing evidence does not justify the requested relief. . . .
     Furthermore, to support a claim of ineffective assistance of counsel, [P]etitioner must
18   establish that the trial and appellate attorneys' conduct was not only deficient, but it was
     also prejudicial. (See, e.g., *Young v. Runnels* (9th Cir. 2006) 435 F.3d 1038, *In re Fields*
19   (1990) 51 Cal.3d 1063, *In re Visciotti* (1996) 14 Cal.4th 325, and *Strickland v.
     Washington* (1984) 466 U.S. 668.) Existing documentation does not establish any such
20   prejudicial error.

21   (LD 12 at 1-2.)

22   The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.

23   *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Appellate counsel does not have a constitutional duty

24   to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

25   Counsel "must be allowed to decide what issues are to be pressed"; otherwise, the ability of counsel to

26   present the client's case in accord with counsel's professional evaluation would be "seriously

27   undermined." *Id.* There is, of course, no obligation to raise meritless arguments on a client's behalf.

28   *See Strickland*, 466 U.S. at 687-88.

18

1        Petitioner appears to claim that communication with his appellate attorney broke down.  (Pet.

2   44-46.)  Petitioner does not show how he suffered any prejudice from any alleged breakdowns in

3   communication.  Petitioner also claims that his appellate counsel did not pursue all available claims, yet

4   the only issues Petitioner identifies that appellate counsel failed to raise are prosecutorial misconduct

5   and ineffective assistance of trial counsel.  (Traverse 49.)  As discussed in Claims Three and Five, *supra*,

6   the prosecutorial misconduct and ineffective assistance of trial counsel claims are without merit.

7   Therefore, appellate counsel was not deficient for failing to raise these issues.  *See Wildman v. Johnson*,

8   261 F.3d 832, 840-42 (9th Cir. 2001) (finding appellate counsel's failure to raise issues on direct appeal

9   does not constitute ineffective assistance when appeal would not have provided grounds for reversal).

10       Based on the foregoing, Petitioner has failed to show appellate counsel's performance was

11  deficient.  *Strickland*, 466 U.S. at 687-88.  Moreover, even if appellate counsel's performance was

12  deficient, Petitioner has failed to show the result of the direct appeal would have been any different.  *Id.*

13       Accordingly, the Court finds that the California courts' rejection of Petitioner's ineffective

14  assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of, clearly

15  established federal law as determined by the United States Supreme Court.  Thus, habeas relief is not

16  warranted on this claim.

17                             **Certificate of Appealability**

18       An applicant seeking to appeal a district court's dismissal of a habeas petition under 28 U.S.C.

19  § 2254 must first obtain a certificate of appealability ("COA") from a district judge or circuit judge.  28

20  U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A judge should either grant the COA or state reasons

21  why it should not issue, and the COA request should be decided by a district court in the first instance.

22  Fed. R. App. P. 22(b)(1); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

23       The applicant for a COA must make a "substantial showing of the denial of a constitutional

24  right."  28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529

25  U.S. 473, 483 (2000).  A "substantial showing" is defined as a demonstration (1) that the issues are

26  debatable among jurists of reason; (2) that a court could resolve the issues differently; or (3) that issues

27  are adequate to deserve encouragement to proceed further.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4

28  (1983); *see Slack*, 529 U.S. at 483-84 (stating that except for substituting the word "constitutional" for

1   the word "federal," § 2253 codified the pre-AEDPA standard announced in *Barefoot v. Estelle*).

2       Where, as present here, a district court has rejected constitutional claims on their merits, the COA

3   standard is straightforward. "The petitioner must demonstrate that reasonable jurists would find the

4   district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The

5   Court has reviewed the record of this case and finds that reasonable jurists would not find the Court's

6   assessment of the constitutional claims debatable or wrong. On the merits of this case, reasonable jurists

7   would not debate the constitutionality of Petitioner's conviction and sentence. Accordingly, the Court

8   declines to issue a certificate of appealability.

9                           **CONCLUSION AND ORDER**

10      For the reasons discussed above, the Court DENIES the Petition for Writ of Habeas Corpus with

11  prejudice and DECLINES the issuance of a certificate of appealability. The Clerk of Court is

12  ORDERED to enter Judgment for Respondent and to close Case No. CV F 07-00765 LJO WMW HC.

13  IT IS SO ORDERED.

14  **Dated:   February 11, 2009**           /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE